**Robert ALPERT, Danro Corporation, and Alba Corporation, Appellants,**

v.

**CRAIN, CATON & JAMES, P.C., Darlene Payne Smith and Sharon B. Gardner, Appellees.**

Nos. 01–04–00101–CV, 01–04–00484–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 22, 2005.

J. Douglas Sutter, Kelly, Sutter & Kendrick, P.C., Houston, TX, Scott Rothenberg, Law Offices of Scott Rothenberg, Bellaire, TX, for Appellants.

Michael Patrick Morris, Tekell, Book, Matthews & Limmer, L.L.P., Roger Townsend, Susanna Lynn Gooch Dokupil, Alexander, Dubose Jones & Townsend LLP, Houston, TX, for Appellees.

Panel consists of Justices HANKS, HIGLEY and BLAND.

## OPINION

JANE BLAND, Justice.

A law firm moved to dismiss this case because Texas law does not recognize a tort action brought against a lawyer by a party opposed to that lawyer's client in litigation. The party responds that he properly pleaded a recognized exception to the general rule. The trial court dismissed the case on special exceptions, and awarded the law firm approximately $13,000 in attorney's fees as a sanction. We agree with the trial court that the facts as pleaded do not weather an attack by special exceptions, and conclude that the trial court did not abuse its discretion in awarding sanctions. We therefore affirm.

### Facts

Appellants, Robert Alpert, Danro Corporation, and Alba Corporation (collectively "Alpert"), sued appellees, Crain, Caton & James, P.C., Darlene Payne Smith, and Sharon B. Gardner (collectively "Crain Caton"), in connection with Crain Caton's legal representation of Alpert's former attorney, Mark R. Riley.[1] Alpert alleges that Crain Caton conspired with Riley to defraud Alpert, and both aided and abetted in the breach of, and tortiously interfered with, Riley's fiduciary duty to Alpert.

Riley is Alpert's former attorney, having assisted him from June 1994 through 1998 in the administration of his business and legal affairs. Among other duties, Riley acted as legal counsel to various busi-

nesses in which Alpert had an interest and to several trusts Alpert established for the benefit of his children. The relationship between Alpert and Riley soured in 1998, and Riley's professional dealings with Alpert ended. Riley sued Alpert in probate court, and Alpert counterclaimed against Riley ("the trust litigation"). Riley hired the Crain Caton law firm to represent him in the trust litigation and, perhaps, during events immediately preceding it.[2]

Alpert thereafter brought this district court action against Crain Caton. In this case, Alpert alleges that Crain Caton conspired with Riley to defraud Alpert, and both aided and abetted, and tortiously interfered with, Riley's fiduciary duty to Alpert by the following: (1) concealing Riley's malpractices and breaches of fiduciary duty; (2) filing frivolous lawsuits against Alpert in probate court; and (3) disparaging Alpert's reputation in the business community. Alpert does not allege that Crain Caton represented him. Rather, he acknowledges that Crain Caton represented Riley. Alpert did not name Riley as a defendant in this litigation against Crain Caton, but instead refers to Riley as a co-conspirator.

In January 2004, the trial court granted Crain Caton's special exceptions and dismissed the case, holding that Alpert "failed to set forth a claim or plead a cause of action against [Crain Caton] recognized under Texas law." In April 2004, the trial court granted Crain Caton's motion for sanctions, ordering Alpert to pay sanctions of $12,831.56 for Crain Caton's attorney's fees and expenses.

---

1. Alpert appeals the dismissal order in cause number 01–04–00101–CV and the sanctions order in cause number 01–04–00484–CV.

2. *In Re: The Roman Merker Trust, Daniel James Alpert Trust, and the Robert Alpert 1996 Children's Trust, Mark Riley, Trustee v. Robert*

*Alpert, et. al.,* No. 305,232–401, Probate Court No. 2, Harris County, Texas. The record does not reflect the date Riley filed the trust litigation lawsuit, the date Alpert counterclaimed, nor the exact date Riley engaged the Crain Caton law firm to represent him.

## The Dismissal Order

In response to Crain Caton's special exceptions, Alpert amended his pleadings several times, and announced to the trial court that he stood on his fourth amended petition. Alpert's petition—referring to Riley as "Riley" and to Crain Caton as "the Defendants"—alleges the following:

The acts and/or omissions of Riley, the fiduciary include, but are not limited to the following:

a. Appropriating proprietary, confidential information protected by the attorney-client privilege and the attorney work product privilege and utilizing that information to make scandalous representations to the Internal Revenue Service and perhaps to other governmental entities. This action amounted to self-dealing in that Riley was interested in collecting monies from the Internal Revenue Service for making complaints about his clients and also to pressure Alpert into paying money to him and the Defendants. The Defendants have stated that they only want money paid to them and to Riley in order for Riley to cease this inappropriate activity;

b. By turning Alpert over to the Internal Revenue Service and perhaps other governmental entities, Riley and the Defendants knew that Riley was breaching his fiduciary duty of "perfect fairness" on the part of an attorney to his clients;

c. With the assistance of the Defendants, Riley did not advise the Plaintiffs of the actions that he was taking with the proprietary and confidential information thereby aiding and abetting Riley to breach the duty of discretion, the duty of loyalty and the duty to make full disclosure of material facts to his clients;

d. By attempting to blackmail the Plaintiffs into paying money to them, the Defendants aided and abetted Riley in breaching his duty of loyalty to the Plaintiffs and his duty to place the interest of the Plaintiffs above his own. Riley and the Defendants used this as an advantage of their personal positions to gain a benefit for themselves at the expense of the Plaintiffs/beneficiaries;

e. The Defendants aided and abetted Riley in a conflict of interest wherein they allowed him to continue to sue the Plaintiffs and to make claims against the Plaintiffs utilizing confidential and proprietary information which Riley gained from the attorney-client privilege and from his attorney work product while representing the Plaintiff in order to extract attorney's fees for the Defendants and so called "trustee fees" for Riley;

f. The Defendants aided and abetted Riley in breaching his fiduciary duty of making a full and accurate confession of all his fiduciary activities, transaction, profits and mistakes all of which is paramount to fraudulent concealment. The Defendants aided and abetted Riley in withholding and concealing the fact that he was turning Alpert over to government entities in order to obtain monies for himself and the Defendants;

g. The Defendants aided and abetted Riley in an unlawful civil conspiracy by filing lawsuits, complaints and other allegations utilizing information and documents learned and obtained from a confidential relationship in order to "shakedown" the Plaintiffs so that monies would be paid to the Defendants and to Riley;

h. The Defendants aided and abetted Riley in making statements such as there were never any loans by Alpert to the Trusts when Riley and the Defendants knew that such statements were false because Riley noted in his own handwriting in his notes as a fiduciary to the Plaintiffs from 1994 through 1998 that loans in fact were made. Again, the Defendants did this in order to pressure Alpert into paying them money and Riley money;

i. The Defendants aided and abetted Riley in suing and attacking the Plaintiffs with respect to the Daniel Alpert Trust, the Roman Alpert Trust, The 1996 Childrens' Trust and the Alpert Family Charitable Remainder Unitrust and the Alpert Family Foundation Trust by stating that other people had engaged in wrong doing [sic] with respect to the securities trades of these Trusts when it was known and proved through Riley's own handwriting that he was aware of all the trades, authorized the trades and in all situations, advised that the trades should be made. Again, the Defendants aided and abetted Riley in taking confidential information and information protected by the attorney-client privilege to pressure the Plaintiffs into paying the Defendants money;

j. The Defendants aided and abetted Riley in breaching his fiduciary duties to the Plaintiffs by diverting more than Ninety Five Thousand Dollars ($95,000.00) of income tax returns from the Internal Revenue Service which were due to the Trusts and taking a substantial amount of that money and paying it to Riley and the Defendants;

k. The Defendants knew that Riley had directed Larry St. Martin to book the monies forwarded by Alpert to the Trusts as loans and not gifts, yet they aided and abetted Riley to claim that the loans were gifts, thereby subjecting Alpert to Internal Revenue Service gift tax. All of this was done in an effort to force Alpert into paying money to Riley and the Defendants; and,

l. The Defendants knew that Riley had failed [to] timely and properly file tax returns for the Daniel Alpert Trust, The Roman Alpert Trust and the Alpert Family Charitable Trust. Nonetheless, they aided and abetted Riley in claiming that he had not breached his fiduciary duties in this regard when they knew that he had.

■ Crain Caton filed special exceptions, contending that Alpert's petition fails to state any cause of action against it. Specifically, Crain Caton excepted on the basis that Alpert's petition "fails to state a claim under Texas law for which relief can be granted" because "[a]ll of the conduct made the basis of [Alpert's] claims occurred during the discharge of [Crain Caton's] duties in representing their client, [Riley], and is absolutely protected from the liability claims asserted by Plaintiffs in this case." [3] The trial court granted Crain Caton's special exceptions and dismissed the case, concluding that Alpert "failed to set forth a claim or plead a cause of action

3. On appeal, Crain Caton also contends that Alpert's petition fails because of vagueness. Although Crain Caton filed such special exceptions, they relate to Alpert's original and first amended petition and not to Alpert's fourth amended petition, which is the subject of this appeal. As Crain Caton did not specially except on this basis before the trial court, it may not rely upon it to support the trial court's order. *Muecke v. Hallstead*, 25 S.W.3d 221, 225 (Tex.App.-San Antonio 2000, no pet.).

against [Crain Caton] recognized under Texas law."

## Discussion

*Special Exceptions*

A special exception is a proper method to determine whether a plaintiff has pleaded a cause of action. *Butler Weldments Corp. v. Liberty Mut. Ins. Co.,* 3 S.W.3d 654, 658 (Tex.App.-Austin 1999, no pet.). When special exceptions are sustained, the pleader may either amend the petition or, as Alpert did here, refuse to amend and challenge the ruling on appeal. *Detenbeck v. Koester,* 886 S.W.2d 477, 479 (Tex.App.-Houston [1st Dist.] 1994, no writ).

We review a trial court's dismissal of a case upon special exceptions for failure to state a cause of action as an issue of law, using a de novo standard of review. *Sanchez v. Huntsville Indep. Sch. Dist.,* 844 S.W.2d 286, 288 (Tex.App.-Houston [1st Dist.] 1992, no writ). We accept all of the plaintiff's material factual allegations and all reasonable inferences from those allegations as true. *Sorokolit v. Rhodes,* 889 S.W.2d 239, 240 (Tex.1994).

*Attorney Liability to Non-Client Third Parties*

At common law, the rule of privity limits an attorney's liability to those in privity with the attorney. *McCamish, Martin, Brown & Loeffler v. Appling Interests,* 991 S.W.2d 787, 792 (Tex.1999). An attorney in Texas therefore is not liable to non-client third parties for legal malpractice. *Id; see also Barcelo v. Elliott,* 923 S.W.2d 575, 577 (Tex.1996). The common law rule does not apply to all causes of action against an attorney. If an independent duty to the non-client exists, "based on the professional [attorney's] manifest awareness of the non-client's reli-

ance on the misrepresentation and the professional's intention that the non-client so rely," then an attorney may be liable for negligent or fraudulent misrepresentation. *See McCamish,* 991 S.W.2d at 792 (allowing a cause of action for negligent misrepresentation by a non-client under the Restatement (Second) of Torts § 552).

Perhaps as an offshoot of its privity jurisprudence, Texas case law has discouraged lawsuits against an opposing counsel if the lawsuit is based on the fact that counsel represented an opposing party in a judicial proceeding. *Bradt v. Sebek,* 14 S.W.3d 756, 766 (Tex.App.-Houston [1st Dist.] 2001, pet. denied). An attorney has a duty to zealously represent his clients within the bounds of the law. *Bradt v. West,* 892 S.W.2d 56, 71–72 (Tex. App.-Houston [1st Dist.] 1994, writ denied). In fulfilling this duty, an attorney has the right to interpose defenses and pursue legal rights that he deems necessary and proper, without being subject to liability or damages. *Id.* If an attorney could be held liable to an opposing party for statements made or actions taken in the course of representing his client, he would be forced constantly to balance his own potential exposure against his client's best interest. *See id.* Such a conflict hampers the resolution of disputes through the court system and the attainment of justice. Thus, to promote zealous representation, courts have held that an attorney is "qualifiedly immune" from civil liability, with respect to non-clients, for actions taken in connection with representing a client in litigation. *See, e.g., Butler v. Lilly,* 533 S.W.2d 130, 131–34 (Tex.App.-Houston [1st Dist.] 1976, writ dism'd).

This qualified immunity generally applies even if conduct is wrongful in the context of the underlying lawsuit. *Renfroe v. Jones & Assocs.,* 947 S.W.2d 285, 288 (Tex.App.-Fort Worth 1997, writ

denied) ("Under Texas law, attorneys cannot be held liable for wrongful litigation conduct."). For example, a third party has no independent right of recovery against an attorney for filing motions in a lawsuit, even if frivolous or without merit, although such conduct is sanctionable or contemptible as enforced by the statutory or inherent powers of the court. *West*, 892 S.W.2d at 72. Courts have refused to acknowledge an independent cause of action in such instances "because making motions is conduct an attorney engages in as part of the discharge of his duties in representing a party in a lawsuit." *Id.* (holding no cause of action existed for making motion for contempt because attorneys do not owe duty to be correct in legal arguments— "even if the ... motion for contempt had been meritless, their conduct in so moving, coming as it did in the discharge of their duties in representing a party in a lawsuit, would still not be actionable."). Thus, an attorney's conduct, even if frivolous or without merit, is not independently actionable if the conduct is part of the discharge of the lawyer's duties in representing his or her client. *Id.* at 74; *Chapman Children's Trust v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 441 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). The immunity focuses on the type of conduct, not on whether the conduct was meritorious in the context of the underlying lawsuit. *Renfroe*, 947 S.W.2d at 288.

■ As the Texas Supreme Court observed in *McCamish*, a lawyer's protection from liability arising out of his representation of a client is not without limits. *See McCamish*, 991 S.W.2d at 793–94; *see also Toles v. Toles*, 113 S.W.3d 899, 912–13 (Tex.App.-Dallas 2003, no pet.). For example, a cause of action could exist against an attorney who knowingly commits a fraudulent act outside the scope of his legal representation of the client. *See Lik-*

*over v. Sunflower Terrace II, Ltd.*, 696 S.W.2d 468, 472 (Tex.App.-Houston [1st Dist.] 1985, no writ). If a lawyer participates in independently fraudulent activities, his action is "foreign to the duties of an attorney." *Id.* (quoting *Poole v. Houston & T.C. Ry. Co.*, 58 Tex. 134, 137 (1882)). A lawyer thus cannot shield his own willful and premeditated fraudulent actions from liability simply on the ground that he is an agent of his client. *See id.*

On appeal, Alpert contends that, despite the general rule that a lawyer cannot be sued by a non-client for actions taken within the scope of the attorney's representation of his client, he asserts a valid cause of action against Crain Caton, because the petition (1) alleges that Crain Caton committed wrongful acts outside of litigation; and (2) alleges that such acts constitute fraud or a conspiracy to commit fraud or breach of fiduciary duty.

### 1. Aiding and Abetting Breach of Fiduciary Duty

■ As set forth above, the majority of Alpert's petition alleges that Riley breached his fiduciary duty and that Crain Caton assisted him in doing so. Alpert thus contends that he alleges a valid cause of action against Crain Caton for aiding and abetting Riley's breach of fiduciary. Alpert relies on *Toles* and *Querner v. Rindfuss*, 966 S.W.2d 661 (Tex.App.-San Antonio 1998, pet. denied), for his contention that Texas has expanded a lawyer's liability to non-clients to include aiding and abetting his client's breach of fiduciary duty.

Alpert's contention is without merit. In *Querner*, the defendant was the attorney for a trust executrix. The executrix misappropriated funds, breached her duties, and committed other bad acts. The beneficiaries directly sued the lawyer-defendant. The trial court held that the benefi-

ciaries could sue for breach of fiduciary duty only if they successfully proved that the lawyer-defendant had engaged in fraud *and* that he was in privity with them or otherwise directly owed them a fiduciary duty. *Id.* at 670. Here, Alpert does not allege that Crain Caton represented him, nor that Crain Caton made representations to him that it was acting as his attorney, nor that Crain Caton (as opposed to Riley) owed Alpert any legal or fiduciary duty—all facts distinguishable from those recited in *Querner* to support the existence of a potential cause of action.

In *Toles,* the defendant was a law firm for the husband in a divorce proceeding. The wife sued the defendant claiming that it had acted wrongfully during the divorce litigation. The trial court held that the wife's claims against the defendant arose from its representation of the husband, and thus the wife had no viable claims against the defendant "unless those claims amount to assertions of fraud or conspiracy to defraud." 113 S.W.3d at 911. Although the wife did not specifically state a claim for fraud, the husband did not file any special exceptions to her petition. As a result, the court liberally construed her pleadings, and held that the wife's claim for aiding and abetting a breach of fiduciary duty "could arguably" involve fraudulent conduct.

Here, the acts that Alpert alleges in his petition to support his claim of aiding and abetting a breach of fiduciary duty occurred during Crain Caton's representation of Riley. Unlike the defendant in *Toles,* Crain Caton specially excepted to Alpert's pleadings. Despite opportunities to replead, Alpert does not allege that Crain Caton committed any acts or mis-

representations, independent of its representation of Riley, upon which he justifiably relied. Absent any allegation that Crain Caton committed an independent tortious act or misrepresentation, we decline Alpert's invitation to expand Texas law to allow a non-client to bring a cause of action for "aiding and abetting" a breach of fiduciary duty, based upon the rendition of legal advice to an alleged tortfeasor client. The trial court thus did not err in dismissing this claim. *See McCamish,* 991 S.W.2d at 793–94 (holding that adoption of section 552 of the Restatement does not threaten lawyers with almost unlimited liability, because it applies to a narrow class of potential claimants and requires that any claimant justifiably rely on the alleged negligent misrepresentation).

### 2. Tortious Interference With Fiduciary Duty

 Alpert concedes in this appeal that no Texas court has recognized a tortious interference with fiduciary duty cause of action. He nonetheless contends that we should adopt such an approach, as it is corollary to his other claims. The acts that Alpert alleges in his petition to support his claim of tortious interference with a fiduciary duty are nothing more than Crain Caton's rendition of legal advice to Riley. Given the facts Alpert alleges, we decline to recognize a cause of action for tortious interference with fiduciary duty. The trial court therefore did not err in dismissing this claim.

### 3. Conspiracy to Defraud [4]

 To determine whether Alpert alleges a valid conspiracy to defraud action

---

4. An actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Tri v. J.T.T.,* 162

S.W.3d 552, 556 (Tex.2005). The elements of fraud are: (1) a material misrepresentation was made; (2) it was false; (3) when the representation was made, the speaker knew it

against Crain Caton, we examine the nature of the complained-of conduct. In his appeal, Alpert contends the following allegations support his conspiracy to defraud claim: Crain Caton assisted Riley in denying that he served as legal counsel for Alpert; Crain Caton filed numerous lawsuits against Alpert on Riley's behalf in order to conceal improper actions and to deflect attention away from Riley's own wrongful conduct; Riley, while represented by Crain Caton, alleged that Alpert committed bad acts in order to force Alpert to accede to demands for money; Crain Caton aided Riley in concealing the fact that he had reported Alpert to the IRS; Crain Caton aided Riley in misusing confidential information by filing lawsuits, complaints and other allegations; Crain Caton aided Riley in his falsely stating that some of the trusts had no loans; and Crain Caton aided Riley in his claims that certain loans of the trusts were taxable gifts.

We hold that none of these alleged acts constitutes conduct "foreign to the duties of an attorney" in the representation of a client. Instead, the complained-of actions involve the filing of lawsuits and pleadings, the providing of legal advice upon which the client acted, and awareness of settlement negotiations—in sum, acts taken and communications made to facilitate the rendition of legal services to Riley. Such acts fall within the context of Crain Caton discharging its duty to represent Riley and are not the basis for an actionable fraud claim against attorneys for whom Alpert alleges neither (1) any legal privity, nor (2) any independent duty to Alpert, together with justifiable reliance upon any representation or act made by Crain Caton.

*See White v. Bayless,* 32 S.W.3d 271, 274–76 (Tex.App.-San Antonio 2000, pet. denied) (holding no cause of action exists in petition claiming that opposing attorney conspired to defraud him by filing numerous pleadings, attempting to evict him, filing false proof of claim in bankruptcy court, and using scurrilous language); *Chapman Children's Trust,* 32 S.W.3d at 440–43 (holding that allegations that opposing attorney refused to provide documentation, denied knowledge of facts, filed motions, pushed settlement, and concealed facts did no more than demonstrate that attorney attempted to negotiate smaller settlement and did not raise issue of fraud); *Renfroe,* 947 S.W.2d at 287–88 (holding no cause of action against attorney for his participation in filing writ of garnishment with inaccurate facts); *see also McCamish,* 991 S.W.2d at 795 (noting that limitations exist upon duty of counsel to non-clients). We therefore hold that the trial court did not err in dismissing this claim.

## The Sanctions Order

In February 2004, Crain Caton moved for sanctions against Alpert under Chapter 10 of the Civil Practice and Remedies Code and Rule 13 of the Texas Rules of Civil Procedure. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 10.001, 10.002 (Vernon 2002); Tex.R. Civ. P. 13. The trial court conducted a hearing and granted Crain Caton's motion, ordering Alpert to pay sanctions of $12,831.56 for Crain Caton's attorney's fees and expenses. On April 8, 2004—the day the trial court signed its sanctions order—Alpert requested that the trial court enter findings of fact and con-

---

was false or the statement was recklessly asserted without any knowledge of its truth; (4) the speaker made the false representation with the intent that it be acted on by the other party; (5) the other party acted in reliance on the misrepresentation; and (6) the party suffered injury as a result. *See DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 688 (Tex. 1990).

clusions of law. The trial court included three particular findings in its sanctions order, but did not enter any additional findings.

Alpert alleges that the trial court erred in granting sanctions because (1) the trial court did not have plenary power at the time that it issued its sanctions order; (2) the trial court failed to issue requested findings of facts and conclusions of law in support of the sanctions order; and (3) it was an abuse of discretion to award sanctions.

*Plenary Power*

■ Alpert contends that the trial court had no power to sign the April 8, 2004 sanctions order because more than thirty days had elapsed since it had signed the January 27, 2004 dismissal order. Whether a court has subject matter jurisdiction is a question of law, and we therefore review the issue de novo. *Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004).

■ After signing a final judgment, a trial court retains jurisdiction over a case for a minimum of thirty days. TEX.R. CIV. P. 329b(d). During this time, the trial court has plenary power to change its judgment. *Check v. Mitchell*, 758 S.W.2d 755, 756 (Tex.1988). A party may extend this period by timely filing an appropriate post-judgment motion. The filing of a motion for new trial under Rule 329b(e) or a motion to modify, correct or reform the judgment under Rule 329b(g), within the initial thirty-day period, extends the trial court's jurisdiction over its judgment up to an additional seventy-five days, depending on when or whether the court acts on the motion. *Philbrook v. Berry*, 683 S.W.2d 378, 379 (Tex.1985); TEX.R. CIV. P. 329b(c), 329b(e), & 329b(g).

■ Here, the trial court signed the dismissal order on January 27, 2004, and thus, retained jurisdiction over the case for thirty days. *See* TEX.R. CIV. P. 329b(d). Crain Caton moved for sanctions on February 25, 2004, within the trial court's initial thirty-day plenary power. Therefore, the issue before this Court is whether Crain Caton's motion for sanctions was a motion to modify the trial court's January 27, 2004 order or a new motion. If the former, the trial court retained plenary power; if the latter, plenary power was lost. *See* TEX.R. CIV. P. 329b(g).

■ "[A] timely filed postjudgment motion that seeks a substantive change in an existing judgment qualifies as a motion to modify under Rule 329b(g), thus extending the trial court's plenary jurisdiction and the appellate timetable." *Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 314 (Tex.2000). In *Lane*, the Texas Supreme Court held that "a motion made after judgment to incorporate a sanction as a part of the final judgment does propose a change to that judgment. Such a motion is, on its face, a motion to modify, correct or reform the existing judgment within the meaning of Rule 329b(g)." *Id.* at 312. *See also In re T.G.*, 68 S.W.3d 171, 176–77 (Tex.App.-Houston [1st Dist.] 2002, pet. denied) (amended motions for sanctions extended the trial court's plenary power over the judgment of dismissal). Here, Alpert contends that Crain Caton's motion does not seek the rendition of a new final judgment because the trial court styled its order, "Order Granting Sanctions," and made a handwritten notation deleting the words, "[Order Granting] Special Exceptions, Order of Dismissal." Alpert thus contends that Crain Caton "requested and ultimately obtained a separate and distinct order assessing sanctions."

In its motion for sanctions, and in support for the trial court's continued plenary power, Crain Caton cites Texas Rule of

Civil Procedure 329b(d). *See* TEX.R. CIV. P. 329b(d) (trial court has plenary power to vacate, modify, correct or reform the judgment within thirty days after the judgment is signed). In its April 8, 2004 sanctions order, the trial court notes that Crain Caton moved for sanctions "within the time limits of a motion for new trial" and sought "a substantive change and modification" of the trial court's dismissal order. The trial court thus viewed the request as one which sought to modify its order of dismissal to include sanctions. We hold that Crain Caton's timely filed postjudgment motion for sanctions sought a substantive change in an existing judgment and qualifies as a motion to modify under Rule 329b(g), thus extending the trial court's plenary jurisdiction. *See Lane,* 10 S.W.3d at 314.

*Findings of Fact and Conclusions of Law*

■ Alpert next contends that the trial court erred in refusing to make findings of fact and conclusions of law, and that such error was harmful. Crain Caton responds that Alpert did not preserve this complaint because Alpert did not file a Rule 297 reminder after the trial court failed to issue any findings of fact or conclusions of law.[5] We agree. *See Averyt v. Grande, Inc.,* 717 S.W.2d 891, 895 (Tex.1986) (holding that because reminder not filed, as required by Texas Rule of Civil Procedure 297; appellant waived argument regarding failure to file findings of fact and conclusions of law); *Employers Mut. Cas. Co. v. Walker,* 811 S.W.2d 270, 271 (Tex.App.-Houston [14th Dist.] 1991, writ denied) (holding that party's failure to file reminder waived argument). Moreover, the trial court included findings in its sanctions order, as required by Chapter 10 and Rule

13. *See* TEX. CIV. PRAC. REM.CODE ANN. § 10.005 (Vernon Supp.2002); TEX.R. CIV. P. 13.

*Review of the Sanctions Order*

Alpert contends that the trial court abused its discretion in awarding sanctions. He does not contend that the attorney's fees were unreasonable; rather, he alleges that sanctions are not warranted. We review a trial court's sanctions order under an abuse of discretion standard. *Laub v. Pesikoff,* 979 S.W.2d 686, 693 (Tex. App.-Houston [1st Dist.] 1998, pet. denied). Our test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). We therefore will overturn a trial court's award of sanctions only if it is based on an erroneous view of the law or a clearly erroneous assessment of the evidence. *Home Owners Funding Corp. of Am. v. Scheppler,* 815 S.W.2d 884, 889 (Tex.App.-Corpus Christi 1991, no writ).

Crain Caton moved for sanctions against Alpert and his attorney under Chapter 10 of the Civil Practice and Remedies Code and Rule 13 of the Rules of Civil Procedure. TEX. CIV. PRAC. & REM.CODE ANN. §§ 10.001, 10.002(c) (Vernon 2002); TEX.R. CIV. P. 13. After conducting an evidentiary hearing, the trial court found sanctions to be appropriate under both provisions. The trial court's order finds that (1) Alpert's original petition asserts frivolous claims; (2) the petition was filed against Crain Caton on the "eve of trial" in the underlying trust litigation between Alpert

---

**5.** "If the court fails to file timely findings of fact and conclusions of law, the party making the request shall, within thirty days after filing the original request, file with the clerk and serve on all other parties ... "Notice of Past Due Findings of Fact and Conclusions of Law" which shall be immediately called to the attention of the court by the clerk." TEX.R. CIV. P. 297.

and Riley; and (3) Alpert refused to dismiss the petition despite repeated requests. The trial court held that these findings "support[ ] the conclusion that the suit was filed for improper purposes, including harassment, delay, needless costs and expense, and the potential for lessening Plaintiffs' adversary's zealous and vigorous representation by his attorneys." Additionally, the trial court found that Alpert's claims are "clearly barred by existing law, have no basis in law or fact, and are not warranted by a good faith argument for the extension, modification or reversal of existing law and in light of the record before the Court, [are] groundless and brought in bad faith or for the purpose of harassment."

*Rule 13 Sanctions*

■ Rule 13 of the Rules of Civil Procedure provides that the signature of an attorney constitutes a certificate that the pleading, motion, or other paper, to the best of his knowledge, "is not groundless and brought in bad faith or groundless and brought for the purpose of harassment." TEX.R. CIV. P. 13. The rule thus protects against "groundless" pleadings and motions. For the purposes of the rule, groundless "means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law...." *Id.*

No sanctions may be imposed under Rule 13 "except for good cause, the particulars of which must be stated in the sanctions order." *Id.* This requirement to include particular findings (1) ensures that the trial court is held accountable and adheres to the standard of the rule; (2) requires the trial court to reflect carefully on its order before imposing sanctions; (3) informs the offending party of the particular conduct warranting sanction, for the purpose of deterring similar conduct in the future; and (4) enables the appellate court to review the order in light of the particular findings made by the trial court. *Rudisell v. Paquette,* 89 S.W.3d 233, 237 (Tex. App.-Corpus Christi 2002, no pet.).

■ To refute the trial court's finding of frivolousness, Alpert relies on several Texas court of appeals' decisions that have upheld a party's lawsuit against an attorney who represents his adversary in some—albeit limited—circumstances. Like the trial court, we either do not agree with Alpert's cited authorities, or we conclude that they are factually distinguishable. This alone, however, is not a basis for imposing sanctions. *See Laub,* 979 S.W.2d at 693 (rule 13 sanctions "cannot become a weapon used to punish those with whose intellect or philosophic viewpoint the trial court finds fault. .... We cannot allow rule 13 to have a chilling effect on those who seek change in legal precedent."). Here, the record and briefing show (1) a relative paucity of law exists on the causes of action alleged as applied to these or similar facts; (2) Crain Caton offered no evidence at the sanctions hearing that the petition, as it is drafted, is factually untrue; and (3) such appellate law that exists, in some instances, arguably supports Alpert's claim. We thus hold that Alpert's unmeritorious claims were not groundless and that the trial court, therefore, should not have imposed sanctions under Rule 13.

*Chapter 10 Sanctions*

■ Chapter 10 of the Civil Practice and Remedies Code provides that the signing of a pleading or motion constitutes a certificate by the signatory that, to the best of the signatory's knowledge, "the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation," and "each claim, defense, or other legal

contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Tex. Civ. Prac. & Rem.Code Ann. § 10.001(1) & (2). Thus, there are two requirements under Chapter 10: (1) that the claims made in pleadings not be frivolous; and (2) that the pleadings not be made for an improper purpose. A finding of either requirement supports the imposition of sanctions. As stated above, Alpert's claims were not frivolous. The trial court's sanction order must thus be supported by evidence that Alpert filed the petition for an improper purpose.

In imposing sanctions under Chapter 10, a trial court is required to specifically detail the sanctionable conduct in its order. Tex. Civ. Prac. Rem.Code Ann. § 10.005 (Vernon Supp.2004–2005) ("[a] court shall describe in an order imposing a sanction under this chapter the conduct the court has determined violated Section 10.001 and explain the basis for the sanction imposed"); *Rudisell v. Paquette*, 89 S.W.3d 233, 238 ("[t]he use of 'shall' in the statute indicates that the requirement for particularity in the sanction order is mandatory"). We thus look to the trial court's sanction order, which finds that Alpert had an improper motive in filing this litigation because it was filed on the eve of trial in the trust litigation.

The trial court could take judicial notice of the prior pleadings in this litigation, establishing that Alpert filed his original petition in this lawsuit on August 26, 2003. *See* Tex.R. Evid. 201; *Smith v. Smith*, 757 S.W.2d 422, 426 (Tex.App.-Dallas 1988, writ denied) (trial court can take judicial notice of contents of its file with or without request of party). During the sanctions hearing, Crain Caton established that the underlying trust litigation was scheduled to go to trial in the early fall. Alpert thus filed this lawsuit scant weeks before the scheduled trial in the underlying trust litigation.

Alpert's attorney testified in response that his lawsuit was filed in good faith because, before he filed the petition, he researched the possibility of the lawsuit, and his research included consultation with at least one other attorney. During the sanctions hearing, however, Alpert's attorney conceded that he did not name Riley as a defendant—rather, he named only Riley's attorneys, who presently represented Riley in the ongoing trust litigation between the parties. Moreover, Crain Caton introduced evidence that Alpert also had sued the experts designated by Crain Caton in the underlying trust litigation, as well as the probate court-appointed receiver. The trial court reasonably could have concluded from these facts that this lawsuit was filed on the "eve of trial" for an improper purpose "including harassment, delay, needless costs and expense, and the potential for lessening [Crain Caton's] zealous and vigorous representation" of Riley. As the fact finder, the trial judge was entitled to evaluate the credibility of the testimony and to determine what weight to give it. *City of Houston v. Jackson*, 135 S.W.3d 891, 905 (Tex.App.-Houston [1st Dist.] 2004, no pet.) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986)). In this case, the evidence supports the trial court's finding.

The trial court conducted a sanctions hearing, during which both parties introduced evidence. The trial court included particular findings in its award of sanctions that are supported by the record. The trial court thus acted with reference to guiding rules and principles. We therefore hold that it did not abuse its discretion in imposing sanctions.

## Conclusion

We conclude the trial court (1) did not err in dismissing Alpert's petition upon special exceptions, and (2) did not abuse its discretion in imposing sanctions under Chapter 10 of the Civil Practice and Remedies Code. We therefore affirm the judgment of the trial court.