Opinion issued June 11, 2009 















In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00847-CV

__________


YIGAL BOSCH, Appellant


V.


MARK S. ARMSTRONG, PAUL BAILIFF, AND SQUIRE, SANDERS &
DEMPSEY L.L.P., Appellees






On Appeal from the 280th District Court

Harris County, Texas

Trial Court Cause No. 2008-17963






MEMORANDUM OPINION

 Appellant, Yigal Bosch, proceeding pro se, (1)
 challenges the trial court's
rendition of summary judgment in favor of appellees, Mark S. Armstrong, Paul
Bailiff, and Squires, Sanders & Dempsey, L.L.P. ("SSD"), in Bosch's suit against
appellees for misrepresentation, "abuse of process and interfering in free commerce,"
malicious prosecution, defamation, and fraud. In eight issues, Bosch contends that
the trial court erred in "overruling [his] motion for a new trial by operation of law,"
granting appellees' summary judgment motion based upon their affirmative defense
of privilege, and in sanctioning him in the amount of $5,000 under Texas Rules of
Civil Procedure 13 and 215.2(b) based upon findings that he had "improperly
attempted to gain advantage" and had filed a groundless pleading in bad faith and for
purposes of harassment. 

 We affirm. 

Factual and Procedural Background

 In his petition, filed on March 24, 2008, Bosch, a real estate investor, alleged
that on September 19, 2007, appellees, on behalf of their client, Toni Scott, who was
a business associate of Bosch,"fraudulently filed a petition against [Bosch] and three
other entities" for damages resulting from the sale of a property in Corpus Christi. 
Bosch alleged that appellees, in this related lawsuit, "intentionally presented untrue
facts" in Scott's petition, harassed the purchaser of the property by requesting
documents, and ruined his reputation. Bosch further alleged that appellees had
"submitted fraudulent statements" to obtain a temporary restraining order in the
related lawsuit. 

 In support of his misrepresentation claim, Bosch asserted that appellees had
obtained the temporary restraining order with a "false and perjuries [sic] affidavit"
and had filed the related lawsuit without any "investigation or study" "for the purpose
of receiving legal fees." In support of his "abuse of process and interfering in free
commerce" claim, Bosch asserted that appellees had "institute[d] an obstacle to future
purchasers of real estate and abused federal laws." In support of his malicious
prosecution, defamation, and fraud claims, Bosch asserted that appellees had
attempted to extort money from him by filing the related lawsuit and wrongfully
accusing Bosch of theft. 

 Appellees filed an answer, in which they generally denied Bosch's allegations
and asserted the affirmative defense of privilege on the ground that the statements
upon which Bosch based his claims "were made in the course of a judicial
proceeding." Appellees then filed their summary judgment motion, asserting that the
statements made in Scott's petition were privileged and true. In their summary
judgment motion, appellees explained that, prior to their filing of Scott's lawsuit,
Scott retained Armstrong, an attorney with the law firm of SSD. Armstrong, on
behalf of Scott, who was the largest holder of membership interests in a limited
liability company or companies that Bosch managed, sent Bosch a notice of breach
and a demand letter, claiming that Bosch had breached an operating agreement by
selling the company's property without the consent of the members and retaining the
proceeds of this sale. After Bosch failed to respond to the demand, Armstrong filed
Scott's petition, setting forth these allegations. Appellees explained that, after filing
Scott's lawsuit, Armstrong also served, on behalf of Scott, a notice of the related
lawsuit upon the purchaser of the property to alert it that Scott would be subpoenaing
it for the purchase documents. Armstrong also filed, on behalf of Scott, an
application for a temporary restraining order, seeking orders prohibiting Bosch from
selling or otherwise encumbering the assets of Bosch's limited liability companies
and diluting or reducing Scott's membership interests. The trial court granted Scott's
application in this related lawsuit, and the parties subsequently entered into three
agreed extensions of this restraining order. Appellees attached to their summary
judgment motion all of these documents from Scott's lawsuit.

 Appellees argued in their summary judgment motion that all of Bosch's claims
in Scott's lawsuit were barred by the affirmative defense of privilege because these
claims arose from statements "made in the court papers filed in the course of a
judicial proceeding." Specifically, appellees asserted that the privilege applied to the
demand letters, pleadings, affidavits, temporary restraining order, and other papers
filed in Scott's lawsuit, including those served in connection with the case. Appellees
also challenged the factual basis of Bosch's claims by attaching evidence to show that
the property in question had been sold prior to the filing of Scott's lawsuit. Appellees
argued that Bailiff, who was another attorney at SSD, was entitled to summary
judgment because his only connection with Scott's lawsuit was the inclusion of his
name in the signature block of the pleadings. Appellees asserted that Armstrong was
the attorney-in-charge of Scott's lawsuit and was solely responsible for the pleadings
and other documents filed in Scott's lawsuit. Finally, appellees sought sanctions on
the ground that Bosch's claims against them were groundless.

 Bosch filed a response, asserting that appellees had filed Scott's lawsuit
without any investigation into or familiarity with the relevant statutory provisions
with the motive to "increase litigation fees." In their reply, appellees asserted that
Bosch had not provided any summary judgment evidence that appellees had made any
representations outside of the related lawsuit or that Bailiff or SSD had committed
any of the conduct at issue. 

 The trial court granted appellees' summary judgment motion and dismissed
Bosch's claims. The trial court found that, in violation of Texas Rule of Civil
Procedure 13, Bosch's claims against appellees were groundless and were not
warranted by a good-faith argument for the extension of existing law. The trial court
found that, in violation of rule 13, Bosch had "improperly attempted to gain an
advantage" in Scott's lawsuit by filing the instant lawsuit. The trial court sanctioned
Bosch in the amount of $5,000 for filing a groundless pleading in violation of rule 13. 
In its findings of fact and conclusions of law, the trial court found that Bosch had
filed a groundless pleading for the purpose of harassment and in bad faith in violation
of rule 13 and concluded that $5,000 was a reasonable sanction.

Summary Judgment Hearing and New Trial Motion

 In his first issue, Bosch argues that the trial court "abused its discretion by
overruling [his] motion for a new trial by operation of law" because it did not conduct
a summary judgment hearing and " prevented [him] from having his day in court and
due process." We construe Bosch's brief to include a complaint that the trial court
abused its discretion in not setting a hearing on his new trial motion.

 It is purely within a trial judge's discretion as to whether to hold an oral
hearing on a summary judgment motion. See Whiteside v. Ford Motor Credit Co.,
220 S.W.3d 191, 194 (Tex. App.--Dallas 2007, no pet.); Retzlaff v. Texas Dept. of
Criminal Justice, 135 S.W.3d 731, 745 (Tex. App.--Houston [1st Dist.] 2003, no
pet.). Here, the trial court considered appellees' summary judgment motion under
submission without an oral hearing. Bosch's due process rights were satisfied as long
as he received a reasonable opportunity to present his written response and evidence. 
See Whiteside, 220 S.W.3d at 194-95. Bosch does not complain that he did not
receive proper notice of the hearing, nor does he complain that he was denied the
opportunity to respond to and present evidence in regard to the summary judgment
motion. Accordingly, we hold that the trial court did not abuse its discretion in not
holding an oral hearing. See id. 

 In regard to the new trial motion, there is nothing in the record before us that
indicates that Bosch ever timely requested a hearing on his new trial motion or that
the trial court denied any such request. Although Bosch complained in his new trial
motion about the trial court's consideration of the summary judgment issues by
submission, Bosch specifically requested that the trial court simply "read" the new
trial motion. Bosch only requested an oral hearing on his new trial motion after the
trial court had lost plenary power over the case. Moreover, Bosch does not assert that
the failure of the trial court to conduct a hearing on his new trial motion precluded
him from presenting evidence necessary to support any of the grounds asserted for the
new trial. See Tex. R. Civ. P. 324(b)(1). We hold that Bosch waived any request for
a hearing on his new trial motion and that the trial court did not err in overruling his
motion by operation of law. See Tex. R. Civ. P. 329b(c).

 We overrule Bosch's first issue.

Summary Judgment

 In his second issue, Bosch contends that the trial court erred in granting
appellees' summary judgment motion. Other than setting forth the general summary
judgment standard of review, Bosch provides the following, very limited briefing on
this issue:

 The [Appellees] in the [related lawsuit] raised the issue of
defamation, but ignored the other causes of actions, the interference in
the general commerce, the TRO, the misrepresentations of facts, the
violations of the LLCA's rules and the loss of sale, all of which preclude
summary judgment. Defendants used the defense of absolute privilege,
which is not a defense for violating the rules.


. . . .


[Appellees] moved on the cause of action for defamation only. Ignoring
the rules of and law's violations. [sic]


 Bosch provides no authority in his briefing of this issue related to appellees'
assertion of privilege. He also does not provide any specific discussion as to how the
defense of privilege applies or does not apply to his claims. 

 In his eighth issue, which is related to his second, Bosch contends that the trial
court erred in finding that appellees' defense of privilege applied to bar his claims. 
In his briefing in support of this issue, Bosch primarily attacks the merits of Scott's
claims in the related lawsuit. For example, Bosch states that Scott's related lawsuit
"was barred by law" and that the timing of the related lawsuit was "premature"
because the "final sale [of the property] occurred" after the filing of the related
lawsuit. Citing to various statutory provisions and rules, Bosch further contends that
Scott "did not have standing to sue or capacity to sue Bosch at the time she did,
therefore the absolute privilege was not invoked." 

 To prevail on a summary judgment motion, a movant has the burden of proving
that it is entitled to judgment as a matter of law and that there is no genuine issue of
material fact. Tex. R. Civ. P. 166a(c); Cathey v. Booth, 900 S.W.2d 339, 341 (Tex.
1995). When a defendant moves for summary judgment, it must either (1) disprove
at least one essential element of the plaintiff's cause of action or (2) plead and
conclusively establish each essential element of its affirmative defense, thereby
defeating the plaintiff's cause of action. Cathey, 900 S.W.2d at 341; Yazdchi v. Bank
One, Tex., N.A., 177 S.W.3d 399, 404 (Tex. App.--Houston [1st Dist.] 2005, pet.
denied). When deciding whether there is a disputed, material fact issue precluding
summary judgment, evidence favorable to the non-movant will be taken as true.
Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). Every
reasonable inference must be indulged in favor of the non-movant and any doubts
must be resolved in its favor. (2) Id. at 549. 

 In Texas, lawsuits against an opposing counsel are discouraged if "based on the
fact that counsel represented an opposing party in a judicial proceeding." Alpert v.
Crain, Caton & James, P.C., 178 S.W.3d 398, 405 (Tex. App.--Houston [1st Dist.]
2005, pet. denied) (citing Bradt v. Sebek, 14 S.W.3d 756, 766 (Tex. App.--Houston
[1st Dist.] 2001, pet. denied)). Of course, an attorney has a duty to "zealously
represent his clients within the bounds of the law." Id. (citing Bradt v. West, 892
S.W.2d 56, 71-72 (Tex. App.--Houston [1st Dist.] 1994, writ denied)). In fulfilling
his duty, an attorney has "the right to interpose defenses and pursue legal rights that
he deems necessary and proper, without being subject to liability or damages." Id. 
"If an attorney could be held liable to an opposing party for statements made or
actions taken in the course of representing his client, he would be forced constantly
to balance his own potential exposure against his client's best interest." Id. "Thus,
to promote zealous representation, courts have held that an attorney is 'qualifiedly
immune' from civil liability, with respect to non-clients, for actions taken in
connection with representing a client in litigation." (3) Id. "This qualified immunity
generally applies even if conduct is wrongful in the context of the underlying
lawsuit." Id. (citing Renfroe v. Jones & Assocs., 947 S.W.2d 285, 288 (Tex.
App.--Fort Worth 1997, writ denied)). "Thus, an attorney's conduct, even if
frivolous or without merit, is not independently actionable if the conduct is part of the
discharge of the lawyer's duties in representing his or her client." Id. at 406. In
determining whether an attorney is immune, the focus is on "the type of conduct, not
on whether the conduct was meritorious in the context of the underlying lawsuit." (4) 
Id.

 Here, it is undisputed that Bosch's claims in the instant lawsuit are based upon
communications and statements made by appellees in the course of representing Scott
in her lawsuit. Appellees sent, on behalf of Scott, a pre-suit demand letter, and then
filed, on behalf of Scott, pleadings. Appellees are entitled to the protection of a
qualified immunity or privilege for the statements and assertions made in these
documents on behalf of Scott. See Alpert, 178 S.W.3d at 405; Watson v. Kaminski,
51 S.W.3d 825, 827 (Tex. App.--Houston [1st Dist.] 2001, no pet.). Appellees also
sought, and obtained, a temporary restraining order on behalf of Scott in the related
lawsuit. (5) Any statements made in this application were made in the course of judicial
proceedings and, thus, these statements are subject to the defense of immunity or
privilege. See Alpert, 178 S.W.3d at 405. Accordingly, we hold that the trial court
did not err in granting summary judgment in appellees' favor on all of Bosch's
claims.

 We overrule Bosch's second and eighth issues.

Sanctions

 In his third, fourth, fifth, sixth, and seventh issues, Bosch contends that the trial
court erred in finding that he had "improperly attempted to gain advantage" by filing
the instant lawsuit, sanctioning him under rules 13 and 215.2(b), finding that he had
filed a groundless and harassing pleading, and finding that a reasonable attorney's fee
or sanction was $5,000. Bosch asserts that the related lawsuit "did not have any
merits" and Scott had "no right or standing to sue" in the related lawsuit. Bosch also
asserts that the $5,000 sanction is based upon appellees' "limited papers" of a general
denial and a summary judgment motion. Bosch argues that he did not file the related
lawsuit for purposes of harassment because Scott's "alleged misrepresentations in her
affidavit for the TRO [in the related lawsuit] constitute a wrongful use of the court
system and an abuse of process" and that the evidence showed that appellees'
"request for production from a third party" constituted a "clear interference with the
practice of buyers who would like to preserve secrecy in their dealings to gain
advantage in negotiations during sale." (6)

 We review a trial court's rule 13 sanction order under an abuse of discretion
standard, and we must determine whether the trial court acted without reference to
any guiding rules and principles. Bradt, 14 S.W.3d at 760-61. The trial court's
discretion is limited only by the requirement that its order be just and that the sanction
imposed be directly related to the harm done by the sanctioned conduct. Id. at 761.

 The signatures of attorneys or parties "constitute a certificate by them" that
they have read their pleadings, motions, or other papers and, to the best of their
knowledge, information, and belief formed after reasonable inquiry, "the instrument
is not groundless and brought in bad faith or groundless and brought for the purpose
of harassment." Tex. R. Civ. P. 13. If a trial court imposes sanctions under rule 13,
it is authorized to "impose an appropriate sanction" under rule 215, "upon the person
who signed [the pleading, motion, or other paper], a represented party, or both." Id.
Rule 215 allows a trial court to charge a sanctioned party with court costs, litigation
expenses, and "reasonable expenses, including attorney fees." Tex. R. Civ. P.
215.2(b)(8). A pleading is "groundless" when it has "no basis in law or fact and [is]
not warranted by good faith argument for the extension, modification, or reversal of
existing law." Tex. R. Civ. P. 13. A trial court may only impose sanctions under rule
13 for good cause, "the particulars of which must be stated in the sanction order." Id.

 Here, the trial court found that Bosch's pleadings in the instant lawsuit were 
groundless and brought in bad faith and for the purpose of harassment. See Tex. R.
Civ. P. 13. Bosch's claims in the instant lawsuit clearly arose from statements made
by appellees, in their capacity as the attorneys for Scott, in her lawsuit, which even
Bosch agrees was pending at the time that Bosch filed the instant lawsuit. By filing
the instant lawsuit, Bosch attempted to raise defensive issues that should have been
asserted in the related lawsuit. For example, Bosch asserted in the instant lawsuit that
statutory provisions deprived Scott from bringing the related lawsuit. (7) Bosch
provided no explanation or authority to the trial court or this Court for his raising of
these issues in a separate lawsuit while the related lawsuit was ongoing. Moreover,
Bosch's claims of defamation and his related claims in the instant lawsuit, as pleaded,
are clearly based on statements made by appellees, on behalf of Scott, that are subject
to the defense of immunity or privilege because these statements were made by
appellees in discharging their duties in the course of judicial proceedings. We
conclude that Bosch's claims in the instant lawsuit were groundless. See Bradt, 14
S.W.3d at 766 (affirming trial court's groundless finding and noting that "[a]ppellant
had before him ample precedent to recognize that Texas case law frowns on suing
opposing counsel simply for representing a party in a judicial proceeding").

 The trial court, in its findings of fact, found that Bosch brought the instant
lawsuit "to gain an advantage" in the related lawsuit and that his claims were brought
in bad faith and for purposes of harassment. The trial court's findings are supported
by the record before us. Bosch, in bringing the instant lawsuit, sought to raise matters
that should have been raised in the related lawsuit, not in an entirely separate case. 
In filing the instant lawsuit, Bosch complained that Scott did not have standing to
pursue her claims. Based upon this assertion, Bosch attempted to sue Scott's
attorneys, and their law firm, without any legal or factual basis. Moreover, it is
undisputed that the related lawsuit was pending at the time Bosch filed the instant
lawsuit. To the extent that Bosch sought damages for injuries allegedly sustained as
a result of the related lawsuit, all of the statements at issue were made by appellees
in the course of the related lawsuit. The trial court could have reasonably concluded
that the claims brought by Bosch in the instant lawsuit were frivolous and were
brought for the purpose of harassing appellees for representing Scott in her lawsuit. 
Bosch has provided this Court with no valid argument or authority to show that the
trial court abused its discretion in concluding that Bosch's intent was to harass
appellees with his frivolous claims, which certainly resulted in a waste of judicial
resources. See Bradt, 14 S.W.3d at 761.

 In regard to the amount of the sanction, Bosch's only specific assertion is that
appellees filed "limited papers" in the instant lawsuit. Even assuming that Bosch has
presented a complaint regarding the amount of the sanction, Bosch has not provided
us with the record from any sanctions hearing, and he has not asserted that the trial
court failed to conduct a hearing or provide him proper notice. (8) It was Bosch's
burden to provide this Court with a record supporting his argument. Appleton v.
Appleton, 76 S.W.3d 78, 87 (Tex. App.--Houston [14th Dist.] 2002, no pet.). In the
absence of a reporter's record, we cannot determine whether the trial court erred in
the amount of sanctions awarded or whether Bosch preserved any error relating to the
amount. Id. In sum, we hold that the trial court did not abuse its discretion in
imposing sanctions under rule 13. 

 We overrule Bosch's third, fourth, fifth, sixth, and seventh issues.

Conclusion


 We affirm the judgment of the trial court.



 Terry Jennings

 Justice


Panel consists of Justices Jennings, Alcala, and Higley.
1. We note that parties who represent themselves pro se must comply with all applicable
laws and rules of procedure and are held to the same standards as are licensed
attorneys. See Mansfield State Bank v. Cohn, 573 S.W.2d 181, 184 (Tex. 1978);
Kanow v. Brownshadel, 691 S.W.2d 804, 806 (Tex. App.--Houston [1st Dist.] 1985,
no writ).

2. We assume, without deciding, that Bosch has adequately briefed the issue of the trial
court's granting of summary judgment in favor of appellees on the affirmative defense
of privilege or, as we refer to it, qualified immunity. We initially note that, contrary
to Bosch's contention on appeal, appellees plainly sought summary judgment on all
of Bosch's claims.
3. Although we use the term "qualified immunity" to describe the appellees' affirmative
defense, we note that our Court, and other courts, also refer to the defense as one of
"privilege." See Watson v. Kaminski, 51 S.W.3d 825, 827 (Tex. App.--Houston [1st
Dist.] 2001, no pet.). For example, in Watson, we explained that "[a]n attorney's
statements made during litigation are not actionable as defamation, regardless of
negligence or malice," and we described this as an "absolute privilege," which
"includes communications made in contemplation of and preliminary to judicial
proceedings." Id. We noted that "[t]o be privileged, the communication must relate
to pending or proposed litigation and must further the attorney's representation," and
we cautioned that " [a]n absolute privilege does not extend to an attorney's
communications outside of judicial proceedings." Id. Finally, we explained that
"[w]hether a statement relates to a proposed or existing judicial proceeding is a
question of law" and that a trial court "must consider the entire communication in its
context and must extend the privilege to any statement that bears some relation to an
existing or proposed judicial proceeding." Id.
4. "For example, a third party has no independent right of recovery against an attorney
for filing motions in a lawsuit, even if frivolous or without merit, although such
conduct is sanctionable or contemptible as enforced by the statutory or inherent
powers of the court." Alpert v. Crain, Caton & James, P.C., 178 S.W.3d 398, 406
(Tex. App.--Houston [1st Dist.] 2005, pet. denied). This is "because making motions
is conduct an attorney engages in as part of the discharge of his duties in representing
a party in a lawsuit." Id.
5. We note that Bosch entered into multiple, subsequent agreements to extend this
restraining order. 
6. As we discuss below, Bosch has not provided this Court with the record from any
hearing held on the sanctions imposed by the trial court. We note that, although
Bosch cites the rule requiring notice and a hearing prior to imposing sanctions, Bosch
does not raise an issue concerning any alleged lack of notice or a hearing. To the
extent he has attempted to raise such an issue, we hold that he has inadequately
briefed it. See Tex. R. App. P. 38.1(h). 
7. In his reply brief, Bosch states that he brought the instant lawsuit to stop the "filing
of an unlawful lawsuit," but he offers no explanation as to whether he raised these
issues in the related lawsuit and, if not, why he did not raise these issues.
8. It appears from Bosch's briefing that there was a hearing conducted on the issue of
sanctions. For example, in his brief, Bosch refers to a $250 hourly rate for attorney's
fees that may have been considered by the trial court, and, in his reply brief, Bosch
states that the trial court set the sanctions hearing.