Opinion issued February 18, 2010
 






 











In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-07-00233-CV
__________
 
DIXON FINANCIAL SERVICES, LTD. AND HYPERDYNAMICS
CORPORATION, Appellants
 
V.
 
JAMES CHANG, NICK H. JOHNSON, RILEY L. BURNETT, JR.,
JOHNSON, AND BURNETT & CHANG, L.L.P., Appellees
 

 
 
On Appeal from the 215th Judicial District Court 
Harris County, Texas
Trial Court Cause No. 2001–06263
 

 
 
OPINION DISSENTING IN PART
          The majority errs in holding that an attorney, “based on qualified immunity,”
cannot be held liable, as a matter of law, for fraudulently misrepresenting to a stock
transfer agent that the attorney’s client, pursuant to an arbitration award, had
ownership rights to shares of stock which were, in fact, wholly owned by another. 
The majority’s holding extends qualified immunity for attorneys beyond its logical
bounds and contradicts the Texas Supreme Court’s express holding that an attorney
may be held liable for negligent misrepresentations made to a non-client. See
McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests, 991 S.W.2d 787,
788–95 (Tex. 1999) (applying Restatement (Second) of Torts § 552). 
          Accordingly, I respectfully dissent from the portion of this Court’s judgment
affirming the trial court’s summary judgment against appellant, Dixon Financial
Services, Ltd. (“Dixon”), in its lawsuit against appellees, James Chang, Nick Johnson,
Riley Burnett, and Johnson, Burnett & Chang, L.L.P. (“JBC”). I otherwise join the
remainder of the majority opinion and this Court’s judgment.    
Factual and Procedural Background
          In their third amended original petition, appellants, Dixon and Hyperdynamics
Corporation (“Hyperdynamics”), allege that appellees, Chang, Johnson, Burnett, and
JBC, while representing Erin Oil Exploration, Inc. (“Erin Oil”), contacted Fidelity
Transfer Company (“Fidelity”) and misrepresented that “574,500 shares of
Hyperdynamics stock . . . [were] in fact the property of [Erin Oil] and the subject of
an arbitration award.” However, Chang knew that “at most, only 60,000 shares of
Hyperdynamics stock . . . could be owned by any of the parties to that litigation.”
          Relying on Chang’s misrepresentations, Fidelity placed a “hold” on all 574,500
shares of Dixon’s Hyperdynamics stock, which prevented Dixon “from exercising any
ownership rights to the stock, including its ability to sell the stock at a time when the
stock was trading large volume at a higher price.” Specifically, Dixon and
Hyperdynamics allege that Dixon had intended to sell its Hyperdynamics stock in
January 2000, when the stock was worth approximately $4.45 million. Dixon was
able to sell its stock only after “Chang and his co-conspirators admitted to Fidelity
that the stock truly belonged to Dixon” and its value had dropped to less than $1.15
million. 
          In their summary judgment motion, Chang, Johnson, Burnett, and JBC asserted
that all of Dixon’s “causes of action should be dismissed as barred by absolute
privilege: an attorney’s conduct undertaken in the context of litigation is not
actionable.” The trial court granted summary judgment against Dixon and in favor
of Chang, Johnson, Burnett, and JBC.


 
Qualified ImmunityIn its first issue, Dixon argues that the trial court erred in granting summary
judgment in favor of Chang, Johnson, Burnett, and JBC because they do not, as a
matter of law, enjoy qualified immunity for fraudulently misrepresenting to Fidelity
that Dixon’s shares of Hyperdynamics stock were subject to an arbitration award. 
          When a party moves for summary judgment based solely on the nonmovant’s
pleadings, we “must accept all facts and inferences in the pleadings as true in the light
most favorable to” the nonmovant. Positive Feed, Inc. v. Guthmann, 4 S.W.3d 879,
882 (Tex. App.—Houston [1st Dist.] 1999, no pet.).
          In support of its holding that Chang, Johnson, Burnett, and JBC enjoy qualified
immunity, the majority relies upon, “as law of the case,” Dixon Fin. Servs., Ltd. v.
Greenberg, Peden, Siegmyer & Oshman, P.C., No. 01-06-696-CV, 2008 WL 746548
(Tex. App.—Houston [1st Dist.] Mar. 20, 2008, pet. denied). In Greenberg, this
Court reasoned:
Construing the pleadings and summary judgment evidence liberally in
favor of appellants, the acts alleged by appellants constitute conduct
undertaken by attorneys to assist a client in securing and recovering an
arbitration award. Such conduct is the kind of conduct in which an
attorney engages in discharging his duties to his client. Labeling the
conduct as fraudulent does not automatically make it actionable and the
attorneys liable for tort damages. We conclude that Greenberg[,] 
Peden, Siegmeyer, [R.F. Bearden Associates,] and Bearden were, as a
matter of law, not liable for the conduct alleged in this case. 

Id. at *11 (emphasis added). This Court held that the trial court did not err in
granting summary judgment in favor of Greenberg, Peden, Siegmeyer, R.F. Bearden
Associates, and Bearden against Dixon, on its fraudulent misrepresentation claim, and
against Hyperdynamics, on its negligent misrepresentation claim. Id.
          It is true that, generally, Texas case law has discouraged lawsuits against an
opposing counsel if the lawsuit is based on the fact that counsel represented an
opposing party in a judicial proceeding. Alpert v. Crain, Caton & James, P.C., 178
S.W.3d 398 (Tex. App.—Houston [1st Dist.] 2005, no pet.). As we explained in
Alpert, 
An attorney has a duty to zealously represent his clients within the
bounds of the law. . . . In fulfilling this duty, an attorney has the right
to interpose defenses and pursue legal rights that he deems necessary
and proper, without being subject to liability or damages. . . . If an
attorney could be held liable to an opposing party for statements made
or actions taken in the course of representing his client, he would be
forced constantly to balance his own potential exposure against his
client’s best interest. . . . Thus, to promote zealous representation,
courts have held that an attorney is “qualifiedly immune” from civil
liability, with respect to non-clients, for actions taken in connection with
representing a client in litigation.

Id. at 405 (citations omitted). 
          In determining whether an attorney enjoys such immunity, the focus is on the
“type of conduct” engaged in by the attorney. Id. at 406. For example, if a lawyer
participates in independently fraudulent activities, his action is “foreign to the duties
of an attorney.” Id. at 406. Thus, a lawyer “cannot shield his own willful and
premeditated fraudulent actions from liability simply on the ground that he is an
agent of his client.” Id. (emphasis added). Moreover, even when acting in a
representative capacity, attorneys are not immune from liability when they engage in
conduct that a non-attorney could have performed. See Miller v. Stonehenge/FASA-Tex., JDC, L.P., 993 F.Supp. 461, 464–65 (N.D. Tex. 1998) (discussing development
of qualified immunity for attorneys in Texas courts and synthesizing various
holdings).  
          In Greenberg, this Court erred in holding that the attorney defendants, “based
on qualified immunity,” could not be held liable, as a matter of law, for fraudulently
misrepresenting to Fidelity that Erin Oil, pursuant to an arbitration award, had
ownership rights to shares of Hyperdynamics stock which were, in fact, wholly
owned by Dixon. Here, likewise, the majority so errs. Taking the pleadings of Dixon
and Hyperdynamics as true, as we must, Chang knowingly misrepresented to Fidelity
that Erin Oil had an ownership interest in shares of stock which were wholly owned
by Dixon. In making the misrepresentation to Fidelity, Chang was not engaged in an
adversarial relationship with Fidelity. As alleged, his fraudulent action, “foreign to
the duties of an attorney,” is not subject to qualified immunity. 
          Under Texas law, an attorney may be liable to a non-client for making a false
statement of material fact to a known person who justifiably relies on the false 
statement, even if the attorney’s purpose is to advance his client’s interests. 
McCamish, 991 S.W.2d at 794–95. In McCamish, the McCamish law firm
represented Victoria Savings Association (“VSA”). Id. at 788. VSA was attempting
to reach a settlement agreement with Boca Chica Development Company, but the
managing partner of Boca Chica refused to sign the settlement agreement unless the
law firm affirmed that the settlement agreement had “been approved by the Board of
Directors of [VSA]. . . .” Id. Ralph Lopez, a McCamish attorney, assured Boca
Chica’s managing partner that the VSA Board of Directors had approved the
settlement agreement. Id. In fact, VSA’s Board of Directors had not approved the
agreement. Id. As a result of Lopez’s misrepresentation, Boca Chica did not receive
the benefit of the settlement agreement and sued McCamish for negligent
misrepresentation. Id. at 789–90. Similarly, here, Chang’s misrepresentation
prevented Dixon from selling its stock, causing Dixon to realize a loss of over $3
million. 
Conclusion
          This Court’s erroneous holding in Greenberg and the panel’s similarly
erroneous holding in the instant case are contrary to the Texas Supreme Court’s
reasoning and ultimate holding in McCamish. Accordingly, I would overrule
Greenberg, sustain the first issue of Dixon, and hold that the trial court erred in
granting summary judgment in favor of Chang, Johnson, Burnett, and JBC on
Dixon’s claims. I would, in regard to the claims of Dixon against Chang, Johnson,
Burnett, and JBC, reverse the judgment of the trial court and remand for further
proceedings.                           

 
 
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Jennings, Keyes, and Higley.
Justice Jennings, dissenting in part.