In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-15-00489-CV
_____

**RONALD ROGERS, INDIVIDUALLY AND AS
EXECUTOR TO THE ESTATE OF LOUISE ROGERS, Appellant**

**V.**

**TED L. WALKER, Appellee**

_____

**On Appeal from the 1st District Court
Jasper County, Texas
Trial Cause No. 30253-B**

_____

**MEMORANDUM OPINION**

Ronald Rogers (Appellant or Rogers), individually and as Executor of the

Estate of Louise Rogers, appeals the trial court's summary judgment in favor of Ted

L. Walker (Appellee or Walker). We affirm the trial court's judgment.

BACKGROUND

In 1996, Ted G. Walker, Appellee's father, prepared a will for Louise Rogers (Louise) and Louise died in 2004 and her will was filed for probate.[1] *Rogers v. Walker*, No. 13-12-00048-CV, 2013 Tex. App. LEXIS 6452, at *1 (Tex. App.—Corpus Christi May 23, 2013, pet. denied) (mem. op.). Louise's will named Rogers, her stepson, as the executor of her estate. *Id.* Gayle Creel, Louise's biological son, retained Appellee to file an opposition to appointment of Rogers as executor, application for appointment of dependent administrator, and application for letters of administration with will annexed. *Id.* at **1-2. After a hearing, the trial court found Rogers unqualified to serve as executor and issued an order appointing Creel to be the executor of Louise's estate. *Rogers v. Creel*, No. 09-06-012-CV, 2006 Tex. App. LEXIS 5415, at *1 (Tex. App.—Beaumont June 15, 2006, no pet.) (mem. op.). This Court subsequently concluded that Rogers was not disqualified to serve as executor of Louise's estate, that the trial court had no discretion to refuse to issue letters testamentary to Rogers, and that the trial court abused its discretion by denying Rogers's application for probate of the will and issuance of letters testamentary. *Id.* at **4-5. This Court reversed the trial court's order and remanded the case for further proceedings. *See id.* at *5.

---

[1] Both Ted L. Walker and Ted G. Walker are attorneys.

Thereafter, Rogers filed the underlying suit against Creel and Walker for their alleged actions during the pendency of the probate appeal. In his Fourth Amended Original Petition ("the petition"), Rogers alleged causes of action for fraud, constructive fraud, conspiracy to commit fraud, breach and conspiracy to breach fiduciary duties, aiding and abetting breach of fiduciary duty, conversion, conspiracy to commit conversion, securing execution of a document by deception, breach of contract, and a declaratory judgment against Walker and Creel.[2] According to the petition, "[t]hrough a series of fraudulent and tortious actions by Creel and Ted L. Walker, Louise Rogers' Estate funds were misappropriated, her house and land [were] repossessed, and the Estate was left deeply in debt." The petition also asserted that Louise's four sons were rightful heirs who received nothing instead of equal shares of her estate. The petition alleged that Creel and Walker conspired to defraud Louise's estate, introduced unsubstantiated claims, and worked together to replace

---

[2] The only petition the appellate record includes is Plaintiff's Fourth Amended Original Petition, filed August 4, 2015, which was the live petition at the time the trial court granted Appellee's motion for summary judgment. As noted in Appellee's motion for summary judgment on grounds of attorney immunity, the trial court in 2011 granted Walker's motions for summary judgment on res judicata, legal malpractice, and fiduciary duty. In 2013, the Thirteenth Court of Appeals affirmed the trial court's dismissal of the claims for breach of fiduciary duty and malpractice, but remanded the case for trial on the fraud claims. *See Rogers v. Walker*, No. 13-12-00048-CV, 2013 Tex. App. LEXIS 6452, at **6-15, 22, 40 (Tex. App.—Corpus Christi May 23, 2013, pet. denied) (mem. op.).

Louise's choice of executor with Creel. The petition included allegations that Walker (1) objected to Rogers as executor even though there was no legitimate basis for the objection; (2) participated in fraudulent and tortious acts when he had Creel promise to post a statutorily required bond, but then worked to have estate funds placed in Creel's hands without bond; (3) misrepresented to the trial court that there was no objection to Creel's "bogus claims" and hid them from the other heirs; (4) ensured beneficiaries received no notice of Creel's self-dealing; (5) secured execution of documents by deception; (6) helped Creel obtain the estate funds without bond; (7) ensured Creel's activities could be committed by subterfuge by withholding required legal notifications; (8) repeatedly failed to serve Rogers and other beneficiaries with probate filings; (9) improperly disposed of administration documents in his possession; and (10) conspired with Creel to convert estate property.

Walker filed his Fifth Amended Original Answer and Cross-Claim wherein he asserted numerous affirmative defenses, including attorney immunity, and specifically as follows:

> Defendant is not liable to the Plaintiff for actions taken in the course and scope of his representation of Creel in the probate proceeding. Defendant was retained to represent Creel in the probate proceeding and all conduct of Defendant complained of by Plaintiff Rogers involved litigation and was part of the discharge of Walker's duties to Defendant Creel, as his client.

4

Walker filed a motion for summary judgment on the basis that the Texas Supreme Court's opinion in *Cantey Hanger* "is dispositive of all of Plaintiffs' claims remaining before this Court[]" and that the motion should be granted as a matter of law on the grounds of attorney immunity because Walker had met his burden to prove that his alleged wrongful conduct was in furtherance of the discharge of his duties to his client.[3] Three affidavits by Walker (and attachments to the affidavits) were attached to the motion as summary judgment evidence. The trial court signed an order granting the motion for summary judgment and dismissing the claims against Walker with prejudice, signed an agreed motion to sever the claims against Walker from the action, and signed a Final Take Nothing Judgment in favor of Walker. Rogers timely filed a notice of appeal.

STANDARD OF REVIEW

We review summary judgment orders de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). The party moving for traditional summary judgment must establish that no genuine issue of material fact exists and

---

[3] In the order granting Walker's motion for summary judgment on attorney-immunity grounds, the trial court noted that "[b]y agreement of counsel the Court granted Defendant Walker's motion to orally amend the motion for summary judgment to include the additional causes of action for constructive fraud and aiding and abetting breach of fiduciary duty that were raised in Plaintiff's 4th Amended Original Petition[.]"

5

the moving party is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). If the moving party produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to present evidence that raises a material fact issue. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). In determining whether there is a disputed issue of material fact precluding summary judgment, we take evidence favorable to the nonmovant as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). We review the summary judgment record "in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005).

"Attorney immunity is an affirmative defense." *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). To be entitled to summary judgment based upon the attorney-immunity doctrine, Walker had to establish that there was no genuine issue of material fact that his conduct was protected by the attorney-immunity doctrine and that he was entitled to judgment as a matter of law. *See id.*

ISSUES ON APPEAL

In his first issue, Rogers argues that the trial court erred in granting summary judgment because Walker's actions administering Louise's estate do not trigger the immunity doctrine provided in *Cantey Hanger*, 467 S.W.3d at 481. In his second

issue, Rogers contends that Walker's affidavit should not have been considered for any purpose because he "had been shown to be an untrustworthy affiant."

Walker argues that Rogers was not his client and that the summary judgment evidence conclusively established that the conduct complained of was within the scope of Walker's representation of his client in litigation of a contested probate proceeding, and therefore *Cantey Hanger* controls the outcome of this case. Walker also contends that the affidavits supporting his motion for summary judgment comply with the requirements of Rule 166a(c) of the Texas Rules of Civil Procedure. According to Walker, the language contained in his August 21, 2015 affidavit is similar to the language used in affidavits in *Cantey Hanger*, and he argues that his affidavit properly supports summary judgment in the present case. We consider issues one and two together.

APPLICABLE LAW

As a general rule, an attorney is immune from civil liability to a non-client for actions taken during legal representation of the attorney's client if the attorney conclusively establishes that the alleged conduct was within the scope of the attorney's legal representation of that client. *See Cantey Hanger*, 467 S.W.3d at 481, 484. The purpose of the attorney-immunity defense is to ensure "'loyal, faithful, and aggressive representation by attorneys employed as advocates.'" *Id.* (quoting

7

*Mitchell v. Chapman*, 10 S.W.3d 810, 812 (Tex. App.—Dallas 2000, pet. denied)). "An attorney is given latitude to 'pursue legal rights that he deems necessary and proper' precisely to avoid the inevitable conflict that would arise if he were 'forced constantly to balance his own potential exposure against his client's best interest.'" *Id.* at 483 (quoting *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. App.—Houston [1st Dist.] 2005, pet. denied)).

In *Cantey Hanger*, Nancy Simenstad, represented by Cantey Hanger, LLP, and Philip Byrd, represented by another firm, were parties to a divorce proceeding. *Id.* at 479. Simenstad and Byrd entered into an agreed divorce decree that awarded Simenstad three airplanes as her separate property, including a Piper Seminole that had been owned by Lucy Leasing Co., LLC, a company the decree awarded to Byrd. *Id.* According to the decree, Simenstad would be responsible for all ad valorem taxes, liens, and assessments on the three aircraft. *Id.* The decree ordered the parties to execute documents necessary to effectuate the transfers contemplated within the decree within ten days of the entry of the decree, and it provided that the attorney for the non-signing party would draft the documents. *Id.* Byrd, Lucy Leasing, and another company awarded to Byrd in the decree sued Simenstad and Cantey Hanger, alleging in part that, over a year after the decree was entered, Simenstad and Cantey Hanger falsified a bill of sale transferring the Piper Seminole from Lucy Leasing to

a third party. *Id.* As to Cantey Hanger, the plaintiffs alleged claims including fraud, aiding and abetting, and conspiracy, and asserted that Cantey Hanger falsified the bill of sale in order to shift tax liability for the Piper Seminole from Simenstad to Byrd in contravention of the decree. *Id.* at 479-80.

Cantey Hanger moved for summary judgment on attorney-immunity grounds and attached exhibits including affidavits from two Cantey Hanger attorneys attesting that the firm was retained to represent Simenstad in the divorce proceedings and that all actions by the firm with respect to the plaintiffs were made in the course and scope of representing Simenstad. *Id.* at 480. The plaintiffs responded that Cantey Hanger's conduct in conspiring with and aiding a client to falsify documents and evade tax liability was not protected by attorney immunity because it was not part of Cantey Hanger's duties in representing its client, and that the claims against Cantey Hanger should be permitted because they involved fraudulent conduct. *Id.* The trial court granted Cantey Hanger's summary judgment motion and dismissed all claims against Cantey Hanger with prejudice. *Id.* The court of appeals reversed as to the fraud, aiding and abetting, and conspiracy claims relating to the sale of the plane and concluded that Cantey Hanger was not entitled to attorney immunity because Cantey Hanger's allegedly fraudulent conduct in the subsequent sale of the plane had nothing to do with the divorce decree and was outside of its representation

9

of a client. *Id*. at 480-81. The Texas Supreme Court granted Cantey Hanger's petition for review to address the parties' dispute over the scope and application of the attorney-immunity doctrine. *Id.* at 481.

In determining that Cantey Hanger had conclusively established that its alleged conduct was within the scope of its representation of Simenstad in the divorce proceedings, was not a foreign duty of an attorney, and was therefore protected by attorney immunity, the Texas Supreme Court explained:

> Indeed, the court of appeals stated, and we agree, that "Cantey Hanger's preparation of the bill of sale to facilitate transfer of an airplane awarded to its client in an agreed divorce decree was conduct in which an attorney engages to discharge his duties to his client" and was not "foreign to the duties of an attorney." Yet the court went on to hold that the complained-of conduct—intentional misrepresentations in the bill of sale made for the purpose of shifting tax liability from Simenstad to Lucy Leasing and Byrd—was outside the scope of Cantey Hanger's duty to its client. This simply does not follow. The *type* of conduct described in these two statements is the same; the only difference is the added detail in the latter description that makes the conduct "wrongful." Again, an attorney's conduct may be wrongful but still fall within the scope of client representation.

*Id.* at 485 (internal citations omitted).

The Court explained that "the focus in evaluating attorney liability to a non-client is 'on the kind—not the nature—of the attorney's conduct[.]'" *Id.* at 483 (quoting *Dixon Fin. Servs. Ltd. v. Greenberg, Peden, Siegmyer & Oshman, P.C.*, No. 01-06-00696-CV, 2008 Tex. App. LEXIS 2064, at *23 (Tex. App.—Houston

10

[1st Dist.] 2008, pet. denied) (mem. op. on reh'g)). The Court determined that "[m]erely labeling an attorney's conduct 'fraudulent' does not and should not remove it from the scope of client representation or render it 'foreign to the duties of an attorney.'" *Id.* at 483 (citing *Alpert*, 178 S.W.3d at 406).

ANALYSIS

We conclude that *Cantey Hanger* is applicable to the present case. We reject Rogers's argument that the present case is distinguishable because it involved the administration of an estate rather than "a completely different situation from the litigious divorce proceeding underlying *Cantey Hanger*." Rogers asserts that the *Cantey Hanger* Court "was also clear about limitations of its holding[]" in that it "recount[ed] at great length a large body of law unaffected by its holding[.]" In particular, the Court in *Cantey Hanger* confirmed that attorneys are not protected from liability "for their actions when they do not qualify as 'the kind of conduct in which an attorney engages when discharging his duties to his client.'" *Id.* at 482 (internal citations omitted). The Court went on to list examples of attorney conduct that would not be protected by the attorney-immunity doctrine, including participation in a fraudulent business scheme, knowingly assisting clients in evading a judgment by fraudulent transfer, and assaulting opposing counsel during trial. *Id.* We agree with the trial court that Walker's conduct fell within the kind of conduct

11

in which an attorney engages when discharging his duties to his client in a probate proceeding. Rogers presents no authority, nor are we aware of any, that supports his contention that the context of the present case falls outside the purview of *Cantey Hanger.*[4]

The United States District Court for the Eastern District of Texas recently noted the following in dismissing, under Rule 12(b)(6) of the Federal Rules of Civil Procedure and on attorney-immunity grounds, a plaintiff's claims of fraud, negligent misrepresentation, conversion, conspiracy, and money had and received against a law firm representing an opposing party to a business transaction:

> In another argument, [the appellant] asserts that attorney immunity does not apply in a non-litigation context, and the [] Defendants' conduct occurred during a business transaction rather than in an adversarial proceeding . . . . The Court disagrees because that "stance is not in line with Texas law." *Iqbal v. Bank of Am., N.A.*, 559 F. App'x 363, 365-66 (5th Cir. 2014). The Texas Supreme Court in *Cantey Hanger* noted that "[t]he majority of Texas cases addressing attorney immunity arise in the litigation context [,] [b]ut that is not universally the case." 467 S.W.3d at 482 n.6. The high court cited two cases "as examples of cases in which courts have applied attorney immunity (or indicated that it could apply) outside the litigation context." *Id.*; *Campbell v. Mortg. Elec. Registration*, No. 03-11-00429-CV, 2012 Tex. App. LEXIS 4030, 2012 WL 1839357, at *5-6 (Tex. App.—Austin May 18, 2012, pet. denied) (applying attorney immunity

---

[4] The majority opinion noted that ordinarily attorney immunity arises in the context of litigation, but not always. *See Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 482 n.6 (Tex. 2015). The Court expressly did not address the scope of attorney immunity in the non-litigation context, but noted that lower courts have recognized that attorney immunity can apply outside the litigation context. *See id.*

to dismiss claims against attorney defendants in a foreclosure proceeding); *Reagan Nat'l Advert. of Austin, Inc. v. Hazen*, No. 03-05-00699-cv, 2008 Tex. App. LEXIS 5826, 2008 WL 2938823, at *8 (Tex. App.—Austin July 29, 2008, no pet.) (mem. op.) (noting that while "many of the cases addressing the attorney-immunity doctrine arise in the context of pending litigation, neither case law, nor the doctrine's underlying policy rationales, are limited to that setting"). Thus the attorney immunity doctrine is not limited to only litigation.

*LJH, Ltd. v. Jaffe*, No. 4:15-CV-00639, 2017 U.S. Dist. LEXIS 14436, at **1-3, 5-11 (E.D. Tex. Feb. 2, 2017). In *Farkas v. Wells Fargo Bank, N.A.*, the Austin Court of Appeals noted that attorney immunity applies outside of the litigation context. No. 03-14-00716-CV, 2016 Tex. App. LEXIS 12956, at *21 (Tex. App.—Austin Dec. 8, 2016, no pet.) (mem. op.).

"A summary judgment may be based on uncontroverted testimonial evidence of an interested witness, or of an expert witness as to subject matter concerning which the trier of fact must be guided solely by the opinion testimony of experts, if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." Tex. R. Civ. P. 166a(c). Walker attached his sworn affidavit of August 21, 2015 to his motion for summary judgment. In his affidavit, Walker referenced his previously filed affidavits of May 10, 2010 and October 26, 2010, and stated as follows:

> The Affidavits describe and reflect my actions, court filings, and conduct in the underlying probate case in detail, establish that all of my actions, court filings and conduct in the underlying probate case and

13

> with respect to Rogers were within the course and scope of my representation of Gayle Creel ("Creel"), and were not foreign to my duties as attorney for Creel in the underlying probate case.
>
> All of my actions, court filings and conduct in connection with the underlying probate case and with respect to Rogers, including all that alleged by Rogers as wrongful on my part, were undertaken by me as part of the discharge of my duties as Creel's attorney, for the purpose of fulfilling my duties as Creel's attorney and were within the scope of my representation of Creel and not for any other purpose. I did nothing foreign to my duties as attorney for Creel.

Although Rogers asserts on appeal that the Walker affidavits are conclusory and do not amount to proper summary judgment evidence, the affidavits are similar to the affidavits that supported the summary judgment motion in *Cantey Hanger*. *See Cantey Hanger*, 467 S.W.3d at 480. Rogers argues that "[t]he Summary Judgment evidence is that Walker contrived to conceal the ever-increasing self-dealing of Creel by withholding service on everyone entitled to notice." Rogers cites to his previously filed Motion for Sanctions Against Defendant Walker for Knowlingly Filing False Affidavits and also to an attachment to that motion, an affidavit of Louise's stepson who claimed he was an heir stating that neither Walker nor Creel ever contacted him and that he would have objected to Creel's "absurd claims" against Louise's estate had the affiant known about them.

The actions of Walker that Rogers contends were actionable include that Walker made an objection to an executor, assisted a client regarding estate funds and posting a statutorily required bond, made certain representations to the trial court

14

regarding a client's claims, communicated with heirs regarding the probate of the will, secured and executed probate documents, made or failed to make service of beneficiaries with probate filings, and improperly handled the administration documents and estate property. We conclude that each of these actions falls within the kind of activity that would be expected as part of the discharge of an attorney's duties in representing his client in a probate matter and in particular in the underlying litigation. *See Cantey Hanger*, 467 S.W.3d at 485; *Diaz v. Monnig*, Nos. 04-15-00670-CV & 04-15-00789-CV, 2017 Tex. App. LEXIS 4929, at **18-20 (Tex. App.—San Antonio May 31, 2017, no pet. h.) (mem. op.); *Santiago v. Mackie Wolf Zientz & Mann, P.C.*, No. 05-16-00394-CV, 2017 Tex. App. LEXIS 2092, at **5-10 (Tex. App.—Dallas Mar. 10, 2017, no pet.) (mem. op.); *Highland Capital Mgmt., LP v. Looper Reed & McGraw, P.C.*, No. 05-15-00055-CV, 2016 Tex. App. LEXIS 442, at **15-17 (Tex. App.—Dallas Jan. 14, 2016, pet. denied) (mem. op.); *Farkas*, 2016 Tex. App. LEXIS 12956, at **17-21; *see also Johnson v. Ashmore*, No. 16-11141, 2017 U.S. App. LEXIS 4304, at **2-3 (5th Cir. Mar. 10, 2017); *Morse v. Codilis & Stawiarski, P.C.*, No. 4:16-CV-279, 2017 U.S. Dist. LEXIS 85321, at **2-9 (E.D. Tex. June 5, 2017); *LJH, Ltd.*, 2017 U.S. Dist. LEXIS 14436, at **5-11. Even conduct that is possibly unethical or wrongful in the context of the underlying suit is not actionable by the non-client when it is "part of the discharge of the

15

lawyer's duties in representing his or her client." *Cantey Hanger*, 467 S.W.3d at 481 (quoting *Toles v. Toles*, 113 S.W.3d 899, 911 (Tex. App.—Dallas 2003, no pet.). This is not to say that attorneys are not otherwise answerable for any misconduct. "[O]ther mechanisms are in place to discourage and remedy such conduct, such as sanctions, contempt, and attorney disciplinary proceedings." *Id.* at 482. But "the remedy is public, not private." *Renfroe v. Jones & Assocs.*, 947 S.W.2d 285, 287 (Tex. App.—Fort Worth 1997, writ denied).

Even accepting Rogers's pleadings as true, we conclude that Walker established his conduct was protected by the attorney-immunity doctrine. Walker established that there was no genuine issue of material fact as to whether his conduct was protected by the attorney-immunity doctrine and that he was entitled to judgment as a matter of law. We overrule issues one and two and affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on September 22, 2016
Opinion Delivered August 3, 2017

Before Kreger, Horton, and Johnson, JJ.