**Reversed and Remanded and Opinion filed December 17, 2019.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-17-00999-CV

---

## NFTD, LLC F/K/A BERNARDO GROUP, LLC; BERNARDO HOLDINGS, LLC; PETER J. COOPER; AND JACQUELINE MILLER, Appellants

## V.

## HAYNES & BOONE, LLP AND ARTHUR L. HOWARD, Appellees

---

**On Appeal from the 269th District Court
Harris County, Texas
Trial Court Cause No. 2015-10626**

---

### O P I N I O N

Appellants, NFTD, LLC f/k/a Bernardo Group, LLC, Bernardo Holdings, LLC, Peter J. Cooper, and Jacqueline Miller appeal the grant of (1) a summary judgment and (2) a plea to the jurisdiction in favor of Appellees, Haynes & Boone, LLP and Arthur L. Howard. We reverse and remand, holding that attorney immunity does not apply in a business transaction.

BACKGROUND

## I.     The Parties

This appeal stems from a lawsuit relating to business asset sales and involving, among other parties, three consecutive owners of the Bernardo women's footwear company, investor Jacqueline Miller, attorney Arthur Howard, and the law firm Haynes and Boone, LLP (who represented the first owners in the sale of the company's business assets to the second owners).[1]  Appellants and Appellees refer to the relevant parties as follows:

- Bernardo 1 (Owner No. 1):  TEFKAB Footwear, LLC f/k/a Bernardo Footwear, LLC, Wilma Jean Smith, and Cynthia Smith (third-party defendants in the trial court);

- Bernardo 2 (Owner No. 2):  NFTD, LLC f/k/a Bernardo Group, LLC, Bernardo Holdings, LLC, and Peter J. Cooper (defendants and third-party plaintiffs in the trial court and Appellants herein);

- Bernardo 3 (Owner No. 3):  JPT Group, LLC (plaintiff);

- The Lawyers:  Haynes and Boone, LLP and Arthur Howard (third-party defendants in the trial court and Appellees herein); and

- The Investor:  Jacqueline Miller (intervenor in the trial court and an Appellant herein).

## II.    Factual Background

Bernardo 1 was owned by Roy R. Smith, Jr., his wife Wilma Jean Smith, and designer Dennis Comeau.  Roy R. Smith, Jr. died in 2002, leaving one half of his

---

[1] This opinion will not address all the parties and claims involved in the underlying lawsuit; instead, we limit our discussion to parties and claims in the instant appeal.

estate to his daughter Cynthia Smith and the other half of his estate to his son Roy R. Smith, III (known as "Trae") and Trae's three children. After Roy Smith, Jr.'s death, Trae started managing the company.

By 2008, Jean, Cynthia, and Dennis were concerned about Trae's management of the company. In August 2009, they hired Haynes and Boone and Howard to "represent the Company and communicate concerning any and all business, financial and legal matters related to the Company." On the same day, Howard terminated Trae's employment with the company. Dennis and Jean removed Trae as the managing member of Bernardo 1, and they started serving as managers.

Bernardo 1's managers engaged Howard to conduct an internal investigation of the company and prepare an "investigative report." Bernardo 1's outgoing attorney, James Hanson, sent a memorandum to Howard to provide an "update/status of legal matters and issues of client [Bernardo 1]" in September 2009. In the memorandum, Hanson disclosed, among other things, that another attorney (who is not a party to this case) had brought a "design infringement claim relating to Olem's knock off of [Bernardo 1]'s Miami sandal" on behalf of Bernardo 1, but had to dismiss the suit after learning in discovery that Bernardo 1's "patent applic[ation] filing was tardy." Hanson also disclosed that another attorney had filed a legal malpractice suit in Maryland against attorneys "on the Miami Sandal late filing," and Hanson advised Howard to check with Trae whether the suit was still pending.

Dennis averred in an affidavit that he discussed Bernardo 1's legal malpractice suit against its former patent and intellectual property attorneys on several occasions with Arthur Howard in August and September 2009. Specifically, he alleged Bernardo 1's "former patent/IP lawyers had messed up several design patents, of which [Dennis] was the inventor, by filing the patent applications too late." Howard

3

denied that he had knowledge about the allegations Bernardo 1 made in the Maryland malpractice suit or that there were potential issues with several of Bernardo 1's design patents.

In August 2010, managers Dennis and Jean signed a resolution to sell Bernardo 1's assets and authorized Dennis and Haynes and Boone to "immediately pursue the potential sale of the Company or its assets." Howard prepared a confidential business profile in November 2010. The profile contained statements about Bernardo 1's intellectual and intangible property, such as, "Bernardo Footwear owns intellectual property in many forms, including patented, trademarked, and copyrighted properties." The profile also listed numerous trademarks and patents, including patents that were allegedly unenforceable and "worthless" because the applications were filed late.

Cynthia knew Bernardo 2 co-owner Peter Cooper from college, so a business profile was sent to Peter and Todd Miller (the other co-owner of Bernardo 2), in February 2011. Bernardo 2 was interested in buying Bernardo 1's assets and negotiations continued for several months; Bernardo 1 was represented by Howard while Bernardo 2 was represented by its own counsel. According to Bernardo 1, with regard to due diligence surrounding the 2011 asset sale, Bernardo 2 had access to records, including a box of materials related to the Maryland malpractice suit, during the negotiation process.

According to Todd Miller, he had many conversations with Bernardo 1 and Howard and he was never told "Bernardo 1 had filed a malpractice lawsuit against its Maryland patent lawyers, alleging that a number of its valuable patents were filed too late and [were] thus unenforceable and/or invalid." Todd Miller averred in his affidavit that Howard never told him "there were issues with several of Bernardo 1's design patents that would have prevented a future owner of those assets from being

4

able to enforce the patent rights for various sandals that it sold." He also averred Howard told him several times "that he wanted to represent Bernardo 2 if Bernardo 2 ended up acquiring the Bernardo assets."

Bernardo 1 and Bernardo 2 signed an asset purchase agreement in September 2011 (the "2011 APA"), under which Bernardo 2 acquired all of Bernardo 1's assets for a $3 million payment at closing and potential earn-out payments based on Bernardo 2's performance over several years. Bernardo 2 ran the business for a few years and then sold the assets (including "all of the copyrights, trademarks, patents, and other intellectual property") to Bernardo 3 in early 2014. Later that year, Bernardo 3 allegedly attempted to enforce its rights for seven women's shoes design patents that it purchased as part of the asset sale, but "it discovered that five of those seven patents were worthless, having previously been declared invalid years before" its asset purchase from Bernardo 2 in 2014.

## III.  Procedural Background

Bernardo 3 sued Bernardo 2 in February 2015 for breach of contract and breach of warranty. It alleged that despite Bernardo 2's warranty that all its patents were enforceable and valid, the five most valuable design patents were all invalid based on untimely patent applications.

Bernardo 2 then asserted third-party claims against Bernardo 1 for, among other things, breach of the 2011 APA, misrepresentation, and fraud. Bernardo 2 also filed a third-party petition against the Lawyers, alleging negligence, negligent misrepresentation, fraud, and fraud in the inducement (arising from the Lawyers' alleged concealment and false representations regarding the validity of design patents).

Jacqueline Miller (an investor in Bernardo 2) filed a petition in intervention

5

asserting fraud and negligent misrepresentation claims against Bernardo 1 and the Lawyers. Miller alleged she relied on representations made in the business profile Howard drafted for Bernardo 1 and other representations regarding the validity of design patents made during the negotiations of the 2011 APA.

The Lawyers moved for summary judgment based on their asserted attorney immunity defense, arguing that attorney immunity barred Bernardo 2's fraud claim and Miller's claims in intervention for fraud and negligent misrepresentation. The Lawyers argued attorney immunity applies not only in the litigation context but also in a transactional setting, and their actions in this case were within the scope of representation and a part of the discharge of the Lawyers' duties to their client.

Before the summary judgment hearing, Bernardo 2 amended its claims. Bernardo 2 filed a second amended third-party petition against the Lawyers, asserting claims for fraud, fraud in the inducement, fraud by nondisclosure, aiding and abetting fraud, negligence, negligent misrepresentation and omission (under Restatement (Second) of Torts §552), and gross negligence based on the Lawyers' conduct leading up to the 2011 APA.

Bernardo 2 responded to the Lawyers' summary judgment motion arguing that attorney immunity only applies in "litigation or quasi-litigation (*i.e.*, adversarial proceedings that employ notice and due process protections)", but it does not extend to transactional matters. Bernardo 2 argued (1) attorney immunity does not apply "to fraudulent acts beyond the scope of the legal representation of the client or to independently fraudulent acts"; (2) the Lawyers are liable for their negligent misrepresentations or omissions under the Restatement (Second) of Torts §552; and (3) the Lawyers failed to address liability under section 552 in their summary judgment motion. Miller adopted Bernardo 2's response.

Miller also filed her response to the Lawyers' motion for summary judgment

6

on January 27, 2017. She stated: "Intervenor hereby incorporates and re-alleges, for the purposes of this Response, Bernardo 2's Response to the Lawyer's [sic] Motion for Summary Judgment . . . [and] joins with Bernardo 2 in its arguments contained in their Response to Lawyers' Motion for Summary Judgment."

The Lawyers filed their reply and argued attorney immunity is a bar to all civil liability (including negligent misrepresentation under section 552 of the Restatement (Second) of Torts). The Lawyers also argued that attorney immunity applies in a transactional setting outside the litigation context and that they "acted within the scope of legal representation of their client."

The trial court granted summary judgment in favor of the Lawyers with respect to (1) Bernardo 2's fraud and fraud in the inducement claims; and (2) "all claims asserted by Intervenor Jacqueline Miller" on February 20, 2017.

On March 1, 2017, the Lawyers filed a motion for clarification or, alternatively, a plea to the jurisdiction, "request[ing] that the Court either clarify its order on summary judgment such that it encompasses all remaining claims against the Lawyers by Bernardo 2 or sustain the Lawyers' plea to the jurisdiction on Bernardo 2's remaining claims based on the Court's holding that attorney immunity applies."

The Lawyers also filed a traditional summary judgment motion "'on negligent misrepresentation claims' filed against them by" Bernardo 2 on March 13, 2017, contending "[s]ummary judgment is proper on the negligent misrepresentation claims" because (1) Bernardo 2 expressly disclaimed reliance on any written or verbal representation made before the 2011 APA was executed; (2) the negligent misrepresentation claims are time-barred; and (3) "Bernardo 2 does not have a viable theory of recoverable damages under its negligent misrepresentation claim." The trial court did not rule on this summary judgment motion.

7

On March 31, 2017, the trial court signed an order denying the Lawyers' motion to clarify, granting the Lawyers' plea to the jurisdiction, and dismissing "all remaining claims in this action asserted by" Bernardo 2. The trial court did not grant the summary judgment on negligent misrepresentation.

Bernardo 2 and Miller timely appealed the trial court's orders granting summary judgment and a plea to the jurisdiction in favor of the Lawyers.

## STANDARD OF REVIEW

### I.    Summary Judgment

We review a grant of summary judgment *de novo*. *B.C. v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276, 279 (Tex. 2017). A party moving for traditional summary judgment has the burden to prove that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.*; *see also* Tex. R. Civ. P. 166a(c). In reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in favor of the nonmovant. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). Attorney immunity is an affirmative defense that protects attorneys from liability. *Sheller v. Corral Tran Singh*, *LLP*, 551 S.W.3d 357, 363 (Tex. App.—Houston [14th Dist.] 2018, pet. denied); *see also Cantey Hanger*, 467 S.W.3d at 481. A party seeking summary judgment on an affirmative defense must conclusively prove every element of the defense. *Jae-Ho Shin v. Am. Bureau of Shipping*, No. 14-17-00605-CV, 2018 WL 3911138, at *2 (Tex. App.—Houston [14th Dist.] Aug. 16, 2018, pet. denied) (mem. op.); *see also Cantey Hanger*, 467 S.W.3d at 481.

### II.    Plea to the Jurisdiction

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction. *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex.

2004). Immunity from suit defeats a trial court's subject matter jurisdiction and is properly asserted in a plea to the jurisdiction. *City of Houston v. Kelly St. Assocs, LLC*, No. 14-14-00818-CV, 2015 WL 7739754, at *3 (Tex. App.—Houston [14th Dist.] Nov. 30, 2015, no pet.) (mem. op.). Whether a trial court has subject matter jurisdiction is a question of law. *Harris Cty. v. Annab*, 547 S.W.3d 609, 612 (Tex. 2018). We therefore review the trial court's ruling on a plea to the jurisdiction *de novo*. *See id*. We express no opinion as to whether or not a plea to the jurisdiction is proper for a claim of attorney immunity.

## ANALYSIS

Bernardo 2 and Miller[2] raise the following issues on appeal:

1.      Did the trial court err in ruling that the attorney immunity defense shields lawyers from suit or liability for their fraudulent conduct toward a nonclient in a business transaction, when the conduct is unrelated to litigation or the litigation context?

2.      Did the trial court err in ruling that the attorney immunity defense shields lawyers from suit or liability for their negligent misrepresentations to a nonclient in a business transaction under Restatement (Second) of Torts §552 and the *McCamish*[3] precedent?

3.      Regardless whether attorney immunity is a fact-based defense to

---

[2] In her appellate brief, Miller states that she "incorporates and fully adopts the Issues Presented filed by [Bernardo 2] . . . and supplements as follows: 1. Regardless of whether attorney immunity is a fact-based defense to liability or a pleadings-based bar to suit, did the trial court err in ruling that the Appellee Lawyers conclusively established their affirmative defense of attorney immunity on Jacqueline's claims?" Miller also states that she "incorporates and fully adopts the Argument and Authorities filed by" Bernardo 2. Therefore, our analysis and disposition of Bernardo 2's issues equally applies to Miller.

[3] *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791-94 (Tex. 1999).

liability or a pleadings-based bar to suit, did the trial court err in ruling that the Appellee Lawyers conclusively established their affirmative defense of attorney immunity on Appellant Bernardo 2's claims?

4.     Did the trial court err in ruling that the Lawyers also conclusively established that all of their alleged wrongful conduct was within the scope of the discharge of their duties to their client (*i.e.*, not foreign to the duties of a lawyer)?

All parties agree the central and dispositive question in this appeal is whether application of the attorney immunity doctrine is limited to the litigation context or whether application also extends to a purely business transactional context; therefore, we begin our analysis addressing that question.

## I.     Attorney Immunity

Texas courts have developed a comprehensive affirmative defense protecting attorneys from liability to non-clients "stemming from the broad declaration over a century ago that 'attorneys are authorized to practice their profession, to advise their clients and interpose any defense or supposed defense, without making themselves liable for damages.'"  *Cantey Hanger*, 467 S.W.3d at 481 (quoting *Kruegel v. Murphy*, 126 S.W. 343, 345 (Tex. Civ. App. 1910, writ ref'd)).  The purpose of the attorney immunity defense is to ensure loyal, faithful, and aggressive advocacy to clients.  *Id*.  The Texas supreme court confirmed that, "[i]n accordance with this purpose, there is consensus among the courts of appeals that, as a general rule, attorneys are immune from civil liability to non-clients 'for actions taken in connection with representing a client in litigation.'"  *Id*. (quoting *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. App.—Houston [1st Dist.] 2005, pet. denied)).

10

In addressing the legal standard applicable to attorney immunity from claims of an opposing party in the litigation context, the Texas supreme court explained that attorneys may be liable to non-clients only for conduct outside the scope of representation of their clients or for conduct foreign to the duties of an attorney — the inquiry being on the kind of conduct at issue rather than the alleged wrongfulness of the conduct. *Id*. at 482-83.

### A. *Cantey Hanger* did not extend immunity to purely business transactions.

Both sides rely on *Cantey Hanger* to support their position. Bernardo 2 argues the doctrine of attorney immunity cannot protect the Lawyers from the claims asserted against them because such immunity only applies in the litigation or quasi-litigation context. The Lawyers contend "*Cantey Hanger* does not limit attorney immunity to litigation" and "adopts a broad 'scope of representation' test".

In *Cantey Hanger*, a man sued his former wife's lawyers for their work in connection with the transfer of an aircraft that was awarded to the wife in the divorce. The majority in *Cantey Hanger* concluded attorney immunity applied because the firm's conduct fell within the scope of its duties in representing its client in the divorce. *Id*. at 482 n.6, 484-85. The majority did not consider whether attorney immunity applies to an attorney's conduct that is unrelated to litigation because it concluded the law firm's conduct occurred during litigation. *Id*. at 482 n.6.

The dissent believed that the transfer—after the conclusion of the divorce—was not "litigation related," and would not have found immunity and worried that the majority's pronouncements went too far. Three justices joined Justice Green's dissenting opinion, expressing firm opposition to extending attorney immunity (characterized therein as "litigation immunity") beyond the litigation context. *See id.* at 488-89 (Green, J., dissenting). The dissent also strongly advocated for

applying the attorney immunity doctrine only to litigation. *See id*. at 486-93 (Green, J., dissenting). The dissent criticized the majority for "hold[ing] that Cantey Hanger conclusively established its affirmative defense of attorney immunity because its alleged conduct occurred within the scope of its representation of [the client] in the divorce proceeding" and "overlook[ing] an important element of the form of attorney immunity at issue in this case—that the attorney's conduct must have occurred in litigation . . . ." *Id*. at 486 (Green, J., dissenting). The dissent also criticized the majority for "implicitly adopt[ing] a test in which attorneys are shielded from civil liability to nonclients if their conduct merely occurs in the scope of client representation or in the discharge of duties to the client." *Id*. at 493 (Green, J., dissenting).

The majority rejected the dissent's criticism, explaining as follows:

The majority of Texas cases addressing attorney immunity arise in the litigation context. But that is not universally the case. In *Campbell v. Mortgage Electronic Registration Systems, Inc.*, for example, the court of appeals held that attorneys hired to assist a mortgage beneficiary in the nonjudicial foreclosure of real property were immune from the borrowers' suit for wrongful foreclosure. No. 03–11–00429–CV, 2012 WL 1839357, at *6 (Tex. App.—Austin May 18, 2012, pet. denied) (mem. op.); *see also Hazen*, 2008 WL 2938823, at *8 (noting that "neither the case law, nor the [attorney-immunity] doctrine's underlying policy rationales, are limited to [the litigation] setting"). Because we conclude that Cantey Hanger's alleged conduct falls within the scope of its duties in representing its client in litigation, we need not consider the attorney-immunity doctrine's application to an attorney's conduct that is unrelated to litigation but nevertheless falls within the ambit of client representation and "requires the office, professional training, skill, and authority of an attorney." *See Dixon Fin. Servs.*, 2008 WL 746548, at *7. The dissent thus mischaracterizes the scope of our opinion in asserting that we "suggest[ ] that this form of attorney immunity applies outside of the litigation context." *Post* at 489. We cite *Campbell* and *Hazen* merely as examples of cases in which courts have applied attorney immunity (or indicated that it could apply)

12

outside the litigation context.

*Id*. at 482 n.6.

We believe the *Cantey Hanger* majority did not extend attorney immunity beyond the litigation context as argued by the Lawyers.

### B. *Cantey Hanger* should not be extended to a business transaction.

The Lawyers make a number of policy arguments for why immunity should extend to a business transaction, relying on *Cantey Hanger*: (1) "[t]he need to ensure 'loyal, faithful, and aggressive representation'" expressed in *Cantey Hanger* "applies equally to transactional law practice"; and (2) "*Cantey Hanger* allows adequate remedies for attorney misconduct".

There might be a need to ensure loyal and aggressive representation in business transactions, but this need is counteracted by inadequate protection for attorney misconduct. The *Cantey Hanger* majority listed sanctions, contempt, and attorney disciplinary proceedings as possible remedies for attorney misconduct during litigation. *Cantey Hanger*, 467 S.W.3d at 482. However, neither contempt nor sanctions are available remedies outside the litigation context. Although attorney disciplinary proceedings can be brought against an attorney for his or her misconduct, such proceedings often might not adequately compensate non-clients for damages (like substantial monetary damages) they suffered from attorney misconduct.

As the dissent in *Cantey Hanger* stated, "[t]he policy reasons behind litigation immunity compel the conclusion that, to be entitled to litigation immunity, the defendant–attorney's conduct must have occurred in litigation." *Id*. at 488 (Green, J., dissenting). "One of the most well-known maxims of the legal profession is that attorneys must zealously advocate for their clients." *Id*. (Green, J., dissenting). "Without this immunity, an attorney's zealous advocacy at trial would be diluted

13

because the attorney would be forced to balance her own interests against those of her client." *Id*. at 489 (Green, J., dissenting). "Ultimately, litigation immunity promotes the ends of justice by ensuring that attorneys can fully develop their clients' cases and pursue all of their clients' rights at trial." *Id*. (Green, J., dissenting). "Limiting the application [of attorney immunity] to statements or conduct in litigation serves this ultimate goal without being overly broad and immunizing attorneys for conduct arising from fraudulent business schemes." *Id*. (Green, J., dissenting). "A limited application of litigation immunity also has the benefit of maintaining procedural safeguards that apply only in litigation." *Id*. (Green, J., dissenting) (citing Tex. Civ. Prac. & Rem. Code Ann. §§ 9.001-.014, 10.001-.006, and Tex. R. Civ. P. 13).

## C.    *Youngkin* did not extend *Cantey Hanger*.

The Lawyers assert the Texas supreme court in *Youngkin v. Hines*, 546 S.W.3d 675 (Tex. 2018) "reaffirmed this broad scope of representation" test from *Cantey Hanger* and "twice described *Cantey Hanger* as a 'scope-of-representation standard' for attorney immunity." According to the Lawyers, "[i]n reaffirming the *Cantey Hanger* test," the Texas supreme court rejected the *Youngkin* intermediate court's limited description of attorney immunity as "litigation immunity" and described "attorney immunity by the broader 'scope of representation' standard." We disagree.

The supreme court's *Youngkin* opinion equally provides no support for extending the doctrine. There, the court (again) did not consider whether attorney immunity is limited to the litigation context because the attorney's conduct clearly occurred during litigation; instead, it only addressed whether the attorney's conduct was within the scope of representation. *See id*. at 678, 681-83.

Second, the supreme court in *Youngkin* did not reject the description of

14

attorney immunity as "litigation immunity". *Id*. at 679 n.2. Rather, footnote 2—to which the Lawyers point—states: "Youngkin referred in his briefs to litigation privilege rather than attorney immunity, but both labels describe the same doctrine." *Id*.

### D.    We are not bound by Federal court opinions.

We note that two federal courts concluded attorney immunity is not limited to the litigation or litigation-like context. *See Troice v. Greenberg Traurig, L.L.P.*, 921 F.3d 501, 505-06 (5th Cir. 2019) ("We are persuaded the Supreme Court of Texas would apply the attorney immunity doctrine in the non-litigation context."); *LJH, Ltd. v. Jaffe*, No. 4:15-CV-00639, 2017 WL 447572, at *2-3 (E.D. Tex. Feb. 2, 2017) (concluding attorney immunity applies to business transactions). However, we are not bound by these two federal court decisions; nor do we find them persuasive. Instead, we find that both the Fifth Circuit panel and the district court misread *Cantey Hanger* when they concluded attorney immunity applies outside the litigation context. The Texas supreme court neither considered whether attorney immunity applies beyond the litigation context nor suggested it would extend the doctrine beyond the litigation context. *See Cantey Hanger*, 467 S.W.3d at 482-86.

### E.    Section 51 of the Restatement of the Law does not address immunity.

To further bolster their argument that attorney immunity applies to business transactions, the Lawyers cite to section 51 of the Restatement of the Law Governing Lawyers and contend section 51 (1) "does not differentiate between litigation and transactional practice" and (2) "extends attorney immunity to both litigation and transactional law practice." But section 51 does not address attorney immunity. *See* Restatement (Third) of the Law Governing Lawyers § 51 (Am. Law Inst. 2000). Section 51 addresses attorneys' "duty of care to certain nonclients"; thus, it does not

inform our analysis regarding the application of attorney immunity in a litigation context versus a transactional context. *See id*.

**F.    All lower court opinions apply immunity only in litigation or litigation related cases.**

Bernardo 2 correctly asserts that no Texas state appellate court has applied the attorney immunity doctrine to business transactions. We have not found a single Texas state case in which a court extended attorney immunity beyond the litigation or litigation-like context. *See Youngkin*, 546 S.W.3d at 78, 681-83 (attorney immunity applied in litigation); *Cantey Hanger*, 467 S.W.3d at 482 n.6, 483-85 (same); *Sheller*, 551 S.W.3d at 360, 362-65 (attorney immunity applied in bankruptcy proceeding); *Rogers v. Walker*, No. 09-15-00489-CV, 2017 WL 3298228, at *1, 4-6 (Tex. App.—Beaumont Aug. 3, 2017, pet. denied) (mem. op.) (attorney immunity applied in administration of estate proceeding); *Santiago v. Mackie Wolf Zientz & Mann, P.C.*, No. 05-16-00394-CV, 2017 WL 944027, at *1-4 (Tex. App.—Dallas Mar. 10, 2017, no pet.) (mem. op.) (attorney immunity applied in foreclosure proceeding); *Farkas v. Wells Fargo Bank, N.A.*, No. 03-14-00716-CV, 2016 WL 7187476, at *6-8 (Tex. App.—Austin Dec. 8, 2016, no pet.) (mem. op.) (same); *Highland Capital Mgmt., LP v. Looper Reed & McGraw, P.C.*, No. 05-15-00055-CV, 2016 WL 164528, at *1 (Tex. App.—Dallas Jan. 14, 2016, pet. denied) (mem. op.) (attorney immunity applied in litigation); *U.S. Bank Nat'l Assoc. v. Sheena*, 479 S.W.3d 475, 478-480 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (disbursement of insurance funds); *Sacks v. Zimmerman*, 401 S.W.3d 336, 340-43 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (attorney immunity applied in pending litigation — statements made in discovery motions and hearings on motions); *Campbell v. Mortg. Elec. Registration Sys., Inc.*, No. 03-11-00429-CV, 2012 WL 1839357, at *1, 5-6 (Tex. App.—Austin May 18, 2012, pet. denied) (mem. op.) (attorney immunity applied in foreclosure proceeding); *Reagan Nat'l Advert. of*

16

*Austin, Inc. v. Hazen*, No. 03-05-00699-CV, 2008 WL 2938823, at *8 (Tex. App.—Austin July 29, 2008, no pet.) (mem. op.) ("Hazen's summary-judgment evidence established that his alleged actions were in the context of an adversarial dispute in which litigation was contemplated, impending or actually ongoing."); *Dixon Fin. Servs., Ltd. v. Greenberg, Peden, Siegmyer & Oshman, P.C.*, No. 01-06-00696-CV, 2008 WL 746548, at *8-9 (Tex. App.—Houston [1st Dist.] Mar. 20, 2008, pet. denied) (mem. op.) ("[T]he attorneys engaged in the complained-of conduct as part of post-arbitration proceedings, an adversarial process similar to litigation."); *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 402, 405-08 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (attorney immunity applied in litigation); *Chapman Children's Tr. v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 433-34 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (attorney immunity applied in dispute regarding disbursement of trust funds post-settlement); and *Renfroe v. Jones & Assocs.*, 947 S.W.2d 285, 288 (Tex. App.—Fort Worth 1997, writ denied) (attorney immunity applied in wrongful garnishment action). *Cf. Butler v. Lilly*, 533 S.W.2d 130, 131 (Tex. Civ. App.—Houston [1st Dist.] 1976, writ dism'd) ("[S]tatements and actions which formed the basis of this suit were made in open court during the course of a judicial proceeding and were privileged as a matter of law.").

As evidenced by the cases cited above, Texas state courts have applied the attorney immunity doctrine only to conduct that occurred in litigation and in proceedings that are akin to litigation, are related to underlying litigation, or are adversarial and have procedural safeguards.

Having considered the parties' arguments in light of (1) current pronouncements from the Supreme Court of Texas, (2) numerous Texas courts of appeals decisions, and (3) policy concerns, we decline to extend attorney immunity protection beyond the litigation, quasi-litigation, or litigation-related context. We

conclude that attorney immunity does not apply in a purely business/transactional context.

## II. Waiver

We briefly address the Lawyers' assertion that "Bernardo 2 fails to challenge the argument that claims based on conduct outside the APA are not actionable, so the judgment can be affirmed on that basis." The Lawyers claim Bernardo 2 failed to challenge in its brief all grounds on which summary judgment may have been granted. In particular, the Lawyers claim that the 2011 APA "disclaimed reliance on any representations except those 'expressly stated in this Agreement'" so that "any representations outside the four corners of the APA cannot be actionable." The Lawyers state that "[b]riefing in the trial court . . . demonstrated that the disclaimer of reliance clause is enforceable" and that the Lawyers in their summary judgment reply "reminded the trial court" that it "'already dismissed Bernardo 2's claims of oral representations'" in a previous order based on the disclaimer of reliance clause.

However, the Lawyers' argument is without merit. First, the "[b]riefing in the trial court" the Lawyers reference was not the Lawyers' briefing. Instead, it was summary judgment briefing between Bernardo 1 and Bernardo 2 — and not related to summary judgment briefing between Bernardo 2 and the Lawyers.

More importantly, the Lawyers moved for summary judgment solely asserting attorney immunity.[4] While they mentioned the 2011 APA's disclaimer language in their reply, they cannot (absent consent) rely on arguments raised for the first time in a summary judgment reply. *See 1001 McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital*, 192 S.W.3d 20, 25 (Tex. App.—Houston [14th Dist.] 2005, pet.

---

[4] As we have noted in the procedural background, the trial court only ruled on the Lawyer's summary judgment motion based on attorney immunity.

18

denied); *see also Sanders v. Capitol Area Council*, 930 S.W.2d 905, 911 (Tex. App.—Austin 1996, no writ). Instead, a motion for summary judgment must expressly present the grounds upon which it is made. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993); *see also 1001 McKinney Ltd.*, 192 S.W.3d at 25.

Accordingly, we sustain Bernardo 2's and Miller's[5] first and second issues.[6]

## CONCLUSION

Having sustained Bernardo 2's and Miller's first and second issues, we hold the trial court erred by granting the Lawyers' summary judgment motion and plea to the jurisdiction on their asserted attorney immunity defense with respect to Bernardo 2's and Miller's claims. We reverse the trial court's orders granting the Lawyers' summary judgment motion and plea to the jurisdiction, and we remand this cause to the trial court for further proceedings consistent with this opinion.


/s/    Meagan Hassan
       Justice

Panel consists of Justices Christopher, Hassan, and Poissant.

---

[5] As we have explained in footnote 2, our analysis and disposition equally applies to Miller.

[6] In light of our disposition, we need not address Bernardo 2's and Miller's remaining issues.