# NO. 12-19-00395-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF* | § | *APPEAL FROM THE* |
| *S.M., E.M., A.M., AND T.M.,* | § | *COUNTY COURT AT LAW* |
| *CHILDREN* | § | *SMITH COUNTY, TEXAS* |

## *OPINION*

T.P.M. appeals the trial court's order in suit to modify the parent-child relationship. On appeal, he argues that the trial court failed to consider child support that he paid to the children's mother, V.K.B., when calculating her net resources. We affirm.

## BACKGROUND

T.P.M. and V.K.B. are the parents of four children, S.M., E.M., A.M., and T.M. The parents were divorced on or about October 23, 2012, and the final decree of divorce appointed both parents as joint managing conservators of the children. V.K.B. received the exclusive right to designate the primary residence of the children within Smith County, Texas, and T.P.M. was ordered to pay $1,400.00 in monthly child support. On January 19, 2017, the trial court entered an order in suit for modification of child support obligation, ordering T.P.M. to pay $2,992.50 in monthly child support.

On August 21, 2018, T.P.M. filed a petition to modify the parent-child relationship, alleging that the circumstances of the children, a conservator, or other party affected by the suit materially and substantially changed since the date of rendition of the orders to be modified, i.e., the 2012 divorce decree and the 2017 child support order. T.P.M. requested that he be appointed the conservator with the exclusive right to designate the primary residence of the oldest child, S.M., and that V.K.B. be obligated to pay child support for S.M. On May 2, 2019, the parents entered into a "Partial Dispute Resolution Rule 11 and Mediation Agreement," in which the

1

parents agreed to the conservatorship of the children and that child support would be determined by the trial court. The parents stipulated that T.P.M.'s net resources for purposes of child support calculation exceeded $8,550.00.

On May 10, the trial court held a hearing regarding child support modification and was asked to determine the meaning of "multiple households" in Texas Family Law Section 154.070. On September 30, the trial court entered an order in suit to modify the parent-child relationship. The trial court ordered, in accordance with the mediation agreement, that both parents be appointed joint managing conservators of the children, that T.P.M. be appointed the parent with the exclusive right to designate the primary residence of S.M., and that V.K.B. be appointed the parent with the exclusive right to designate the primary residence of E.M., A.M., and T.M.

Regarding child support, the trial court found that after reviewing statutes, case law, and arguments of counsel, Section 154.070 pertained to an obligor who has children with multiple spouses or ex-partners. The trial court did not find that the calculation of V.K.B.'s net resources should include the child support that she received from T.P.M. Therefore, the trial court ordered that T.P.M. be obligated to pay V.K.B. child support for E.M., A.M., and T.M. in the amount of $2,341.00 per month, and that V.K.B. be obligated to pay T.P.M. child support for S.M. in the amount of $167.64 per month.

On May 23, T.P.M. filed a request for findings of fact and conclusions of law. On November 14, he filed a notice of past due findings of fact and conclusions of law. The trial court did not file findings and conclusions. This appeal followed.[1]

### CHILD SUPPORT

In his sole issue on appeal, T.P.M. argues that the trial court erred in failing to consider the child support he paid to V.K.B. when calculating V.K.B.'s net resources.

**Standard of Review**

The meaning of a statute is a legal question, which we review de novo to ascertain and give effect to the Legislature's intent. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (citing *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 683 (Tex. 2007)). In other words, our primary objective is to ascertain and give effect to the legislature's intent, which is determined by the language of the statute itself. *Id.*; *see* TEX. GOV'T CODE ANN.

---

[1] The Office of the Attorney General of Texas, not V.K.B., filed an appellee's brief.

§ 312.005 (West 2013); *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631-32 (Tex. 2008). Where text is clear, text is determinative of that intent. *Entergy Gulf States, Inc.*, 282 S.W.3d at 437; *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) ("[W]hen possible, we discern [legislative intent] from the plain meaning of the words chosen."); *see also Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651–52 (Tex. 2006). This general rule applies unless enforcing the plain language of the statute as written would produce absurd results. *Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999). Therefore, our practice when construing a statute is to recognize that "the words [the Legislature] chooses should be the surest guide to legislative intent." *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999). Only when those words are ambiguous does an appellate court "resort to rules of construction or extrinsic aids." *In re Estate of Nash*, 220 S.W.3d 914, 917 (Tex. 2007).

**Applicable Law**

Texas Family Code Chapter 154 governs child support proceedings and sets forth guidelines to apply in determining an equitable amount of child support. *See* TEX. FAM. CODE ANN. §§ 154.001–.309 (West 2014 & Supp. 2020). Chapter 154 instructs that the trial court "shall calculate net resources for the purpose of determining child support liability." *Id.* § 154.062(a) (West Supp. 2020); *Newberry v. Bohn-Newberry*, 146 S.W.3d 233, 236 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

Section 154.070 entitled "Child Support Received by Obligor" provides that

> In a situation involving multiple households due child support, child support received by an obligor shall be added to the obligor's net resources to compute the net resources before determining the child support credit or applying the percentages in the multiple household table in [Chapter 154].

*See* TEX. FAM. CODE ANN. § 154.070 (West 2014). Further, the Texas Family Code provides a means of computing support for children in more than one household. *See id.* § 154.128 (West 2014). The statute states that "[i]n applying the child support guidelines for an obligor who has children in more than one household," the court should apply the percentage guidelines in the subchapter by making the computations as set forth in the statute. *See id.* And in lieu of performing the computation under Section 154.128, the trial court may determine the child support amount for the children before the court by applying the percentages, in a table provided

in the family code, to the obligor's net resources. *See id.* § 154.129 (West 2014). Both Sections 154.128 and 154.129 refer to an obligor who has children in more than one household, computing a child support credit for the obligor's children who are not before the court but for whom the obligor has a duty to support, and "other children" for whom the obligor has a duty to support but who are not before the court. *See id.* §§ 154.128,154.129; *see also* 40 TEX. JUR. 3D FAM. LAW § 1267 (West 2018) (effect on guidelines of children in more than one household).

**Analysis**

In this case, we must determine the meaning of Section 154.070 and, in doing so, ascertain and give effect to the legislature's intent. *See **Entergy Gulf States, Inc.**,* 282 S.W.3d at 437; ***First Am. Title Ins. Co.**,* 258 S.W.3d at 631-32; TEX. GOV'T CODE ANN. § 312.005.

T.P.M. argues that Section 154.070 provides that child support received by an obligor shall be added to that obligor's net resources in situations involving multiple households. He contends that the legislature did not provide a specific definition for "household" in that section and that its common meaning is a "single house or dwelling." *See* BLACK'S LAW DICTIONARY 756 (8th ed. 2004) (defining "household" as a "family living together. . . [a] group of people who dwell under the same roof."). He also points to the Texas Family Code's definition of "household" as a "unit composed of persons living together in the same dwelling, without regard to whether they are related to each other." *See* TEX. FAM. CODE ANN. §§ 71.005 (West 2019) & 263.001 (West 2019). Thus, he contends, that interpreting "household" to include a set of parents and children regardless of where they reside contradicts the plain and common meaning of the term. The Attorney General contends that the definition of "household" is merely a predicate inquiry and application of the statute depends on other factual determinations, such as whether V.K.B. was an "obligor" under a prior order, the amount of child support V.K.B. "received" from T.P.M., and whether V.K.B.'s net resources should be imputed at minimum wage. The Attorney General further argues that enforcing T.P.M.'s construction of the statute would bring about an "absurd" result.

In ascertaining and giving effect to the legislature's intent in Section 154.070, we first turn to the language of the statute itself. *See **Entergy Gulf States, Inc.**,* 282 S.W.3d at 437; ***First Am. Title Ins. Co.**,* 258 S.W.3d at 631-32; TEX. GOV'T CODE ANN. § 312.005. The language begins with the phrase "[i]n a situation involving multiple households due child support." The Texas Family Code defines "Household" as a unit composed of persons living together in the

4

same dwelling, without regard to whether they are related to each other. *See* TEX. FAM. CODE ANN. § 71.005 (defining "household" in context of protective order); § 263.001(a)(3) (defining "household" in context of reviewing placement of children under the care of the Department of Family and Protective Services). Additionally, Section 71.006 provides that a "member of a household" includes a person who previously lived in a household. *See* TEX. FAM. CODE ANN. § 71.006 (West 2019). However, these definitions do not apply to the context of multiple households for the purposes of calculating a person's net resources in determining child support liability.

Instead, in applying the child support guidelines for an obligor who has children in more than one household, the trial court shall apply the percentage guidelines by making the following computation:

> (1) determine the amount of child support that would be ordered if all children whom the obligor has the legal duty to support lived in one household by applying the schedule in this subchapter;
>
> (2) compute a child support credit for the obligor's children who are not before the court by dividing the amount determined under Subdivision (1) by the total number of children whom the obligor is obligated to support and multiplying that number by the number of the obligor's children who are not before the court;
>
> (3) determine the adjusted net resources of the obligor by subtracting the child support credit computed under Subdivision (2) from the net resources of the obligor; and
>
> (4) determine the child support amount for the children before the court by applying the percentage guidelines for one household for the number of children of the obligor before the court to the obligor's adjusted net resources.

TEX. FAM. CODE ANN. § 154.128(a); 40 TEX. JUR. 3D FAM. LAW § 1267. Section 154.129 includes a table as an alternative method for computing support for children in more than one household and provides that one should determine the number of children before the court and the number of "other" children for whom the obligor has a duty of support. *See* TEX. FAM. CODE ANN. § 154.129. Thus, these statutes reflect that the language "multiple households" refers to households in which children for whom the obligor has a duty to support are not before the court and necessarily includes an obligor's children by other spouses or ex-partners, who are likewise not before the court. Here, there were no children of either V.K.B. or T.P.M. who were not before the trial court in the underlying case or for whom either party had a duty to support. Therefore, V.K.B. and T.P.M., are not a "multiple household" within the meaning of Section

154.070.

This conclusion is further supported by the fact that V.K.B. is not an obligor as contemplated by Section 154.070. Section 154.070 states that "child support received by an obligor" shall be added to that obligor's net resources in computing his or her net resources. *See* TEX. FAM. CODE ANN. § 154.070. T.P.M. contends that V.K.B. qualifies as an obligor and child support he paid to her should be included in her net resources. However, Section 101.022 defines an "obligor" as a person required to make payments under the terms of a support order for a child. *See id.* § 101.022 (West 2019). V.K.B. was not required to make payments under any prior court order in this case. In the final decree of divorce and the January 19, 2017, order in suit for modification of child support, T.P.M. was obligated to pay child support to V.K.B. Thus, V.K.B. could not be considered an "obligor" until the trial court ordered her to pay child support on September 30, 2019.

Additionally, interpreting the statute as T.P.M. requests would be contrary to the purpose of the child support guidelines, which is to aid the court in determining an *equitable* amount of child support, and would lead to an absurd result. *See* TEX. FAM. CODE ANN. § 154.121 (West 2014). According to T.P.M.'s brief, V.K.B.'s net resources based on the federal minimum wage total $1,136.54. If his ordered child support payment of $2,341.00 is added to her net resources as provided in Section 154.070, her net resources would total $3,477.54. T.P.M. stated that V.K.B.'s net resources should be reduced by her monthly health insurance obligation of $93.79, totaling final net resources of $3,383.75. If V.K.B. were to pay 14.75 percent of her net resources under the statute, she would have a child support obligation of $499.10, or approximately three times as much as ordered by the trial court. Because V.K.B. has no income other than the $600.00 reimbursement for her two foster children and her income has been imputed to be the federal minimum wage, this increase in her net resources under Section 154.070 would be anything but equitable and consequently, is not the type of result contemplated by the legislature in enacting the statute.[2]

---

[2] The Attorney General raised the issue that V.K.B.'s net resources were not required to be imputed at the minimum wage. The Attorney General argued that there was evidence that she had no income, as opposed to an "absence of evidence" of her income as required in Section 154.068 of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 154.068 (West Supp. 2020) (providing that "[i]n the absence of evidence of a party's resources, as defined by Section 154.062(b), the court shall presume that the party has income equal to the federal minimum wage for a 40-hour week to which the support guidelines may be applied"). At trial, V.K.B. testified that she was a stay-at-home mother, and that her only income was the child support she received from T.P.M. and a $600.00 reimbursement from the Department of Family and Protective Services for her two foster children. She stated that

For the reasons discussed above, we conclude that the parties are not "multiple households" and V.K.B. is not an "obligor" under Section 154.070. Accordingly, the trial court did not err in failing to consider the child support paid to V.K.B. by T.P.M. in calculating V.K.B.'s net resources for purposes of child support. We overrule T.P.M.'s sole issue.

<u>FAILURE TO FILE FINDINGS AND CONCLUSIONS</u>

In his brief, T.P.M. appears to complain of the trial court's failure to file findings of fact and conclusions of law. To the extent his brief can be construed as properly asserting such a complaint, it is waived.

Any party may file a request for findings of fact and conclusions of law in any case tried without a jury within twenty days after the judgment is signed. TEX. R. CIV. P. 296. T.P.M. filed his request for findings and conclusions on May 23, 2019, before the judgment was signed on September 30. Texas Rule of Civil Procedure 306C states that "[n]o motion for new trial or request for findings of fact and conclusions of law shall be held ineffective because prematurely filed . . . and every such request for findings of fact and conclusions of law shall be deemed to have been filed on the date of but subsequent to the time of signing of the judgment." TEX. R. CIV. P. 306C. Thus, T.P.M.'s premature request is "deemed to have been filed" on September 30, "the date of but subsequent to the time of signing of the judgment." TEX. R. CIV. P. 306C; *see also* ***Echols v. Echols***, 900 S.W.2d 160, 161 (Tex. App.—Beaumont 1995, writ denied) (premature request for findings of fact and conclusions of law deemed filed on date judgment signed).

When, as here, the trial court fails to respond to a timely request for findings within twenty days, the requesting party must file a notice of past due findings within thirty days of the original request. TEX. R. CIV. P. 297; ***Bluebonnet Fin. Assets v. Miller***, 324 S.W.3d 600, 602 (Tex. App.—El Paso 2009, no pet.). The record does not show that the trial court filed timely findings of fact and conclusions of law. On November 14, 2019, T.P.M. filed a notice of past due findings and conclusions. Considering that T.P.M.'s request was deemed filed on September 30,

---

she "understood" that the trial court would apply a "presumed" minimum wage salary in order to calculate her child support obligation. When, as here, no findings of fact and conclusions of law are filed, we must presume the trial court made all the necessary findings to support its judgment. ***Holt Atherton Indus., Inc. v. Heine***, 835 S.W.2d 80, 83 (Tex. 1992); ***Roberson v. Robinson***, 768 S.W.2d 280, 281 (Tex. 1989). Therefore, we must presume that the trial court found that V.K.B. was capable of working; thus, the calculation of V.K.B.'s child support based upon the federal minimum wage salary of $1,136.54, or $167.64 per month. Such finding has support in the record.

2019, his notice of past due findings of fact and conclusions of law should have been filed on or before October 30. Thus, T.P.M.'s notice of past due findings of fact and conclusions of law was untimely. *See* TEX. R. CIV. P. 297.

A party who fails to file a notice of past due findings and conclusions or files an untimely notice of past due findings and conclusions waives a complaint on appeal regarding a trial court's failure to file findings of fact and conclusions of law. *See **Alpert v. Crain, Caton & James, P.C.**,* 178 S.W.3d 398, 410 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (complete failure to file notice of past due findings); ***Fleming v. Taylor***, 814 S.W.2d 89, 91 (Tex. App.— Corpus Christi 1991, no writ) (untimely filed notice of past due findings). Because T.P.M.'s notice of past due findings of fact and conclusions of law was untimely, he waived any complaint regarding the trial court's failure to file findings of fact and conclusions of law.

## DISPOSITION

Having overruled T.P.M.'s sole issue, we ***affirm*** the judgment of the trial court.

JAMES T. WORTHEN
Chief Justice

Opinion delivered December 16, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

DECEMBER 16, 2020

NO. 12-19-00395-CV

### IN THE INTEREST OF S.M., E.M., A.M., AND T.M., CHILDREN

Appeal from the County Court at Law

of Smith County, Texas (Tr.Ct.No. 12-0886-E)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*